**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DOUGLAS P. CHAPPELL,
           *Defendant-Appellant,*          No. 10-4746

v.

COMMONWEALTH OF VIRGINIA,
           *Intervenor.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:10-cr-00042-LMB-1)

Argued: January 27, 2012

Decided: August 14, 2012

Before TRAXLER, Chief Judge, and WILKINSON and
WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the
majority opinion, in which Chief Judge Traxler joined. Judge
Wynn wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** Caroline Swift Platt, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Alexandria, Virginia, for
Appellant. Jamie L. Mickelson, OFFICE OF THE UNITED
STATES ATTORNEY, Richmond, Virginia, for Appellee.
**ON BRIEF:** Michael S. Nachmanoff, Federal Public
Defender, Brian Mizer, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexan-
dria, Virginia, for Appellant. Neil H. MacBride, United States
Attorney, Alexandria, Virginia, for Appellee. Kenneth T.
Cuccinelli, II, Attorney General of Virginia, E. Duncan Get-
chell, Jr., Solicitor General of Virginia, Charles E. James, Jr.,
Chief Deputy Attorney General, Wesley G. Russell, Jr., Dep-
uty Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Intervenor.

---

**OPINION**

WILKINSON, Circuit Judge:

The Virginia police impersonation statute, Virginia Code
§ 18.2-174, prohibits individuals from falsely assuming or
pretending to be a law enforcement officer. In this case,
appellant asks us to hold the statute facially unconstitutional
under the First Amendment. For the reasons that follow, we
decline the invitation and affirm the judgment of the district
court.

I.

On October 6, 2009, Douglas Chappell was stopped for
speeding by a U.S. Park Police Officer on the George Wash-
ington Memorial Parkway. In an attempt to avoid a speeding
ticket, Chappell falsely told the officer that he was a Fairfax
County Deputy Sheriff. In fact, Chappell had not been

employed by the Fairfax County Sheriff's Office for approximately one year.

The officer asked Chappell for his law enforcement credentials, and Chappell replied that he had left them at home. He then produced his Virginia driver's license, pointing out accurately — that the license photo depicted him in uniform. In order to verify Chappell's employment, the officer called the Fairfax County Sheriff's Office, which requested an employee identification number. When asked for his employee identification number, Chappell made one up. He subsequently admitted his lie and was arrested for impersonating a police officer.

Chappell was charged in the U.S District Court for the Eastern District of Virginia with impersonating a police officer in violation of 18 U.S.C. § 13 — which makes Virginia Code § 18.2-174 applicable to conduct occurring on the George Washington Memorial Parkway — and with speeding. After the magistrate judge denied Chappell's motion to dismiss the impersonation charge under the First Amendment, the parties proceeded to a bench trial. Chappell then pled guilty to speeding and was convicted of the impersonation charge. The magistrate judge imposed a $120 fine on the speeding charge. He imposed a sentence of six months probation, along with 40 hours of community service and a $250 fine, on the impersonation charge. Defendant appealed the magistrate judge's rulings to the district court, which affirmed the rulings on all grounds. This appeal followed.

## II.

On appeal, Chappell contends that Virginia Code § 18.2-174 violates the Free Speech Clause of the First Amendment. The statute provides:

> Any person who shall falsely assume or exercise the functions, powers, duties and privileges incident to

the office of sheriff, police officer, marshal, or other peace officer, or who shall falsely assume or pretend to be any such officer, shall be deemed guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2-174. Chappell was not punished under the clause forbidding individuals from "falsely assum[ing] or exercis[ing] the functions, powers, duties and privileges" of a law enforcement officer. He was convicted under the clause that prohibits "falsely assum[ing] or pretend[ing] to be any such officer," and his challenge focuses solely on this second clause. According to Chappell, this clause is unconstitutionally overbroad because it bans a substantial amount of protected speech. In addition, Chappell argues that the statute cannot survive strict scrutiny because the second clause is a content-based speech restriction and is not narrowly tailored. Without contending that § 18.2-174 is unconstitutional as applied to him, Chappell asks us to strike the law down on its face.

## A.

As the Supreme Court has repeated, facial invalidation of legislation is disfavored. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("Facial challenges are disfavored for several reasons."); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("[F]acial challenges to legislation are generally disfavored[.]" (citation omitted)). Because "[c]laims of facial invalidity often rest on speculation[,] . . . they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Wash. State Grange*, 552 U.S. at 450 (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Facial invalidation is also contrary to principles of judicial restraint, under which "courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be

applied.'" *Id.* at 450-51 (quoting *Ashwander v. TVA*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring)). Finally, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451.

Chappell presents us with a particularly inappropriate case for recognizing a challenge of facial invalidity. First, the Virginia impersonation statute has a plainly legitimate sweep. By protecting unsuspecting citizens from those who falsely pretend to be law enforcement officers, the statute serves the Commonwealth's critical interest in public safety. *See, e.g.*, *People v. Ellis*, 696 N.E.2d 1, 3 (Ill. App. Ct. 1998) (noting that a state impersonation statute "exists to protect citizens who would be harmed or deceived by those acting under the color of authority"). Crucially, the second clause of § 18.2-174 prohibits dangerous conduct — such as pretending to be a law enforcement officer in order to board an airplane — that might not fall under the first clause. And it is easy to envision how just pretending to be a police officer could — without more — assist an individual in gaining entrance to a home or abducting a child. In addition to promoting public safety, the statute deters individuals from pretending to be police officers in an attempt to evade fines, incarceration, and other state-imposed sanctions. The Virginia statute and others like it have regularly been employed in service of these important interests. *See, e.g.*, *United States v. Jackson*, 163 F.3d 599, 1998 WL 609705, at *3 (4th Cir. Sept. 1, 1998); *English v. Commonwealth*, 598 S.E.2d 322, 324 (Va. Ct. App. 2004); *People v. Reyes*, 768 N.E.2d 374, 384 (Ill. App. Ct. 2002).

Second, Chappell is right at the core of the Virginia impersonation statute's plainly legitimate sweep. After falsely informing the Park Police Officer that he was a Deputy Sheriff, Chappell furthered the misrepresentation by stating that he left his credentials at home, by pointing out that his driver's license photo depicted him in uniform, and by making up a

false employee identification number. As demonstrated by these undisputed facts, there is no question that Chappell tried to dodge a traffic ticket by "falsely assum[ing] or pretend[ing] to be" a law enforcement officer. Chappell even conceded before the district court that he "briefly claimed to be a police officer in a failed attempt to avoid a speeding ticket." J.A. 117. This is precisely the kind of conduct that the statute was designed to prohibit.

Chappell does not even bring an as-applied challenge to his conviction, perhaps in recognition of the frivolousness of such a claim. Instead, in an effort to distract attention from his place at the heart of the statutory prohibition, Chappell hypothesizes the rights of third parties, arguing that the statute is facially unconstitutional under the First Amendment because it "criminalizes the behavior of adults who attend costume parties dressed as a police officer, children playing cops and robbers, and actors portraying law enforcement officials." Appellant's Br. at 17.

It is telling that these are the only hypotheticals appellant can conjure up. Of course, it is ludicrous to suggest that costumed party-goers, children, and actors will be prosecuted for pretending to be police officers. Despite acknowledging that a number of states "have impersonation statutes like that of Virginia," Appellant's Supp. Reply Br. at 2-3 n.1, Chappell does not point to a single case — in Virginia or elsewhere — where such a statute has been construed to cover his posited hypotheticals. We decline to facially invalidate § 18.2-174 just because Chappell can conceive of far-fetched applications involving innocent behavior.

The government suggests that § 18.2-174 would not even apply to these hypotheticals because the word "falsely" adds a mens rea requirement to the statute. Chappell disagrees, arguing that "falsely" simply means "not true" and does not suffice to add a mens rea element. Chappell's argument is misplaced. The Supreme Court's recent decision in *United*

*States v. Alvarez* makes clear that courts must "construe statutes 'in light of the background rules of the common law, . . . in which the requirement of some *mens rea* for a crime is firmly embedded.'" No. 11-210, slip op. at 3 (U.S. June 28, 2012) (Breyer, J., concurring in the judgment) (quoting *Staples v. United States*, 511 U.S. 600, 605 (1994)). Moreover, the word "falsely" expressly fulfills this function. *Id.* (reading the Stolen Valor Act, which criminalized "falsely represent[-ing]" oneself as the recipient of certain military decorations, as proscribing "only false factual statements made with actual knowledge of their falsity and with the intent that they be taken as true"); *see also id.* at 2 n.1 (Alito, J., dissenting) ("The Act's use of the phrase 'falsely represents' . . . connotes a knowledge requirement.").

Moreover, there is no doubt that Chappell intended to deceive the Park Police Officer. There was no unwitting falsehood here. Chappell's argument, once again, draws attention to the considerable lengths to which he will go to distract attention from his own conduct. But litigating the rights of others poses problems of standing because these hypothetical third parties have suffered no injury in fact, nor are they able to present a concrete case or controversy, as the purported innocents are purely imaginary. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983); *Flast v. Cohen*, 392 U.S. 83, 94-95 (1968).

Our friend in dissent argues that the Supreme Court's decision in *Alvarez*, which invalidated a statute not as facially overbroad but rather on general facial grounds, "binds us" to the same analysis and result here. See post at 23. It is difficult to understand why that would be so. *Alvarez*'s holding that the Stolen Valor Act was facially invalid in no way repeals the Supreme Court's repeated cautions against striking down legislation on its face. The Court explained in *United States v. Stevens* just two terms ago, for instance, that "[t]o succeed in a typical facial attack, [a party] would have to establish 'that no set of circumstances exists under which [a statute]

would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" 130 S. Ct. 1577, 1587 (2010) (citations omitted). Here, of course, there is little question that § 18.2-174 has a "plainly legitimate sweep" and that "circumstances exist[] under which [the statute] would be valid" because the Supreme Court has said so in *Alvarez* itself: all nine justices affirmed that the federal officer impersonation statute, 18 U.S.C. § 912, is constitutional. Slip op. at 9 (plurality opinion); *id.* at 6 (Breyer, J., concurring in the judgment); *id.* at 10 (Alito, J., dissenting).

*Alvarez* thus in no way gives this court license to simply ignore the many legitimate applications that a statute such as § 18.2-174 possesses. And it in no way permits us to ignore the Court's declaration in the very same opinion that government impersonation and identity theft statutes are very different from the Stolen Valor Act and therefore less susceptible to a "disfavored" facial challenge, *Wash. State Grange*, 552 U.S. at 450. The dissent repeatedly dismisses all this as Supreme Court dicta, but inconvenient Supreme Court statements may not be so easily wished away.

## B.

Failing in his general facial challenge, Chappell heads for the lifeboat of overbreadth doctrine. However, this case is not appropriate for overbreadth analysis, and even if it were, Chappell's challenge would still fail.

Overbreadth refers to a particular subset of facial challenges to statutes. Whereas many facial challenges, such as that in *Alvarez*, allege that a statute at issue is unconstitutional in all its applications, overbreadth challenges are pursued by those such as Chappell to whom the statute is unquestionably valid as applied. *See Stevens*, 130 S. Ct. at 1587; *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985).[1] Generally,

---

[1] The dissent indicates that overbreadth analysis is unnecessary because the Supreme Court in *Alvarez* invalidated the Stolen Valor Act on its face

an individual to whom a statute may constitutionally be applied may not challenge that statute on behalf of third parties. *New York v. Ferber*, 458 U.S. 747, 767 (1982). The First Amendment overbreadth doctrine, however, carves out a narrow exception to the general rule. *See, e.g.*, *Ferber*, 458 U.S. at 768; *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). The overbreadth doctrine is predicated on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. For this reason, the Supreme Court has "allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Ferber*, 458 U.S. at 769.

Though the Court has permitted such attacks, "the overbreadth doctrine is not casually employed." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999). "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the Court "[has] recognized that the overbreadth doctrine is 'strong medicine' and [has] employed it with hesitation, and then 'only as a last resort.'" *Ferber*, 458 U.S. at 769 (citation omitted). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather,

---

without explicitly asking whether it was unconstitutionally overbroad. *See post* at 18-19, 21-22. Section 18.2-174 is very different from the Stolen Valor Act, however, in that it not only has a plainly legitimate sweep but also serves interests repeatedly acknowledged by the Supreme Court to be compelling. *See post* at 12-14. Unlike in *Alvarez*, therefore, here the arguments for general facial invalidation are so weak that the only way Chappell can attempt to get at the question of invalidity is through an overbreadth challenge.

"there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801 (citations omitted).

Chappell argues that the statutory clause forbidding individuals from "falsely assum[ing] or pretend[ing]" to be a law enforcement officer is unconstitutionally overbroad. But because Chappell has failed to show any "realistic danger" that the Virginia impersonation statute will significantly compromise anyone's First Amendment rights, we need not entertain his challenge. The Supreme Court's reasoning in *Members of City Council of L.A.* is on point: "Appellees have simply failed to demonstrate a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court. It would therefore be inappropriate in this case to entertain an overbreadth challenge to the ordinance." *Id.* at 802; *see also S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 536-37 n.15 (1987). So too here. There is not a "realistic danger" that kids will be chilled out of costume parties or actors deterred from taking roles as policemen for fear of prosecution under Virginia Code § 18.2-174. For unlike in *United States v. Stevens*, 130 S. Ct. 1577 (2010), where the Court worried that a statute aimed at the niche markets for dogfighting depictions and crush videos might hinder the much larger market for hunting magazines and hunting videos, *see id.* at 1592, there is no risk here that the statute's very existence will cause third parties to refrain from constitutionally protected speech.

Moreover, far from significantly compromising "recognized First Amendment protections," Virginia's police impersonation statute prohibits a species of identity theft in which there is little or no communicative value. This class of identity theft plays "no essential part of any exposition of ideas." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).

And it is more in the nature of conduct than speech. Chappell, for instance, did more than falsely state he was a Deputy Sheriff: he pretended to be a police officer by implying that he left his credentials at home, volunteering his driver's license, pointing out that he was depicted in uniform in the license photo, and making up a false identification number. As the Supreme Court has repeated,

> facial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws . . . .

*Broadrick*, 413 U.S. at 615; *see also L.A. Police Dep't*, 528 U.S. at 39-40; *Ferber*, 458 U.S. at 770. Because the behavior prohibited by § 18.2-174 is closer to conduct than speech, this is a particularly inappropriate case in which to entertain the "strong medicine" of an overbreadth challenge.

Furthermore, even applying the overbreadth doctrine, Chappell's challenge has no merit. Under the overbreadth analysis, a law that restricts speech may be invalidated only if its realistic unconstitutional applications are "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis in original). Neither condition is satisfied here. The statute's legitimate sweep is considerable, and it is difficult to show a "substantial" number of unconstitutional applications when appellant does not point to even one, at least not to one that actually took place. His musings on Hollywood actors and Halloween dress do not satisfy this requirement because they are based on speculation, not actual fact. As the Court explained in *Virginia v. Hicks*, 539 U.S. 113 (2003), "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and *from actual*

*fact*,' that substantial overbreadth exists." *Id.* at 122 (emphasis added). That demonstration is absent here.

## III.

### A.

Chappell finally seeks support from *United States v. Alvarez*, which held the Stolen Valor Act, 18 U.S.C. § 704(b), facially unconstitutional as a content-based restriction on speech. No. 11-210, slip op. at 3 (U.S. June 28, 2012) (plurality opinion).[2] In *Alvarez*, a four-Justice plurality declared that false statements of fact do not by themselves fall outside of the First Amendment's scope. *Id.* at 4-10. Applying exacting scrutiny, the plurality invalidated the Stolen Valor Act because there was not an adequate causal link between the Act and the government's interest in protecting military honors and because the Act did not represent a sufficiently narrow means of securing that interest. *Id.* at 12-18. Moreover, in this context, simple counterspeech should suffice to achieve the government's objectives. *Id.* at 15-17. Justice Breyer, joined by Justice Kagan, produced the majority for invalidating the statute. Concurring in the judgment, Justice Breyer reasoned that the Stolen Valor Act worked a disproportionate harm to protected speech interests relative to the government's interests advanced by the Act. *Id.* at 8-10 (Breyer, J., concurring in the judgment). Significantly, no Justice thought it advisable to drape a broad cloak of constitutional protection over actionable fraud, identity theft, or the impersonation of law enforcement officers.

---

[2]The Stolen Valor Act provides that "[w]hoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both." 18 U.S.C. § 704(b).

Contrary to Chappell's assertions, *Alvarez* supports our conclusion that § 18.2-174 is not facially invalid under the First Amendment. To begin with, the Supreme Court distinguished the Stolen Valor Act, which criminalized "pure speech," from a number of constitutionally permissible statutes that regulate speech in a manner that "implicate[s] fraud or speech integral to criminal conduct." *Id.* at 4, 9 (plurality opinion). The Court recognized, for example, the general validity of laws prohibiting "the false representation that one is speaking as a Government official or on behalf of the Government." *Id.* at 8. Indeed, each of the Court's opinions expressly confirmed the constitutionality of a law bearing striking similarities to the one before us: 18 U.S.C. § 912, the federal statute prohibiting impersonation of government officers. *Id.* at 9; *id.* at 6 (Breyer, J., concurring in the judgment); *id.* at 10 (Alito, J., dissenting).[3] *Alvarez* also cites with approval another federal statute similar to the one at bar,

---

[3]This statute provides that "[w]hoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such . . . shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 912.

Chappell and the dissent argue that this statute is distinguishable from § 18.2-174 because it requires an offender not only to assume or pretend to be a peace officer, but also to "act[] as such." *See post* at 19-20. But that misconceives the import of § 912 to our analysis. The Supreme Court's express recognition of § 912's validity in *Alvarez* is relevant not because § 18.2-174 is identical to § 912 (it is not), but rather because it shows that § 18.2-174, as part of a family of statutes aimed at deterring law enforcement impersonations, has a plainly legitimate sweep. Moreover, seven of the nine Justices concluding that § 912 is legitimate made no reference to the "acts as such" requirement, *see Alvarez*, No. slip op. at 9 (plurality opinion); *id.* at 10-11 & n.14 (Alito, J., dissenting), and even Justice Breyer's opinion does not indicate that this requirement is the *sine qua non* of officer impersonation statutes, *see id.* at 6 (Breyer, J., concurring in the judgment). At bottom, because *Alvarez* confirms that § 18.2-174 has a plainly legitimate sweep, and certainly where an offender pretends to be an officer and acts as such, we see no great profit in being drawn into an extended semantic debate about what constitutes "acting" and what does not.

which prohibits the "unauthorized use of the names of federal agencies such as the Federal Bureau of Investigation." 18 U.S.C. § 709. These impersonation statutes, *Alvarez* explains, are constitutional because they do more than "merely restrict[] false speech"; they also "protect the integrity of Government processes" and "maintain the general good repute and dignity of government service itself." Slip op. at 9 (plurality opinion) (quoting *United States v. Lepowitch*, 318 U.S. 702, 704 (1943)). Thus, far from supporting Chappell's argument, *Alvarez* instead confirms that § 18.2-174 speaks to the very real problem of law enforcement impersonations and the misfortunes that can flow from them.

Moreover, to entertain a facial challenge in this case could quickly lead to a treacherous scenario of falling statutory dominoes, placing numerous federal and state impersonation statutes at risk — all in the face of the Supreme Court's strong signals to the contrary. Federal anti-impersonation statutes encompass a variety of contexts and differ in their exact wording, but 18 U.S.C. § 911 provides an illustrative example, prohibiting one from "falsely and willfully represent[ing] himself to be a citizen of the United States." Accepting Chappell's challenge might place this federal law and others like it in jeopardy. *See also, e.g.*, 18 U.S.C. § 914 (impersonating creditors of the United States); *id.* § 915 (impersonating foreign diplomats); *id.* § 917 (impersonating Red Cross members). Whether differing impersonation statues could be fairly distinguished from the one at hand remains an open question, but the risks appellant invites by embracing the sweeping tactic of facial statutory invalidation are apparent. In addition, a number of states have laws that proscribe the same type of law enforcement impersonation as § 18.2-174 using materially indistinguishable language. *See, e.g.*, Kan. Stat. § 21-5917 (punishing one who "represents oneself" as an officer); Miss. Code § 97-7-43 (punishing one who "falsely and willfully assumes or pretends to be an officer"); N.D. Cent. Code § 12.1-13-04 (punishing one who "falsely pretends to be" an officer). To accept Chappell's claim in this case would call

these statutes into question as well — all, again, despite the Supreme Court's supportive statements about law enforcement anti-impersonation statutes in *Alvarez.*

B.

Other aspects of *Alvarez* reinforce our decision. As a facial matter, the Stolen Valor Act and § 18.2-174 are much different in approach. In striking down the Stolen Valor Act, the Supreme Court noted that it covered persons (such as Alvarez himself) who made false statements about military decorations without the intent to "secure employment or financial benefits." *Id.* at 1-2. Section 18.2-174, by contrast, prevents precisely this kind of material benefit. Even acknowledging that appellant brings only a facial claim, Chappell's own conduct serves as an illustration of this distinction. Chappell did not make the false claim of being a police officer as mere "bar stool braggadocio," *id.* at 8 (Breyer, J., concurring in the judgment), but rather for the material purpose of avoiding a speeding ticket. Impersonation with this latter purpose bears a closer kinship to the kind of identity theft that a state can surely proscribe consistent with the First Amendment. For "[w]here false claims are made to effect a fraud or secure moneys or other valuable considerations, . . . it is well established that the Government may restrict speech without affronting the First Amendment." *Id.* at 11 (plurality opinion).

*Alvarez* also stresses the importance of counterspeech — suggesting an online database cataloging Medal of Honor recipients — as a disinfectant that can achieve the government's interest in preventing lies about military honors in a less speech-restrictive manner. *Id.* at 17. Yet the same counterspeech simply cannot "suffice to achieve" the government's interest in this case. *Id.* at 15. An individual who is approached by a stranger pretending to be a police officer may not have the ability, much less the time, to consult a database of actual police officers. Counterspeech may also be less than effective in cases like Chappell's, where a person claims

to be a police officer in an attempt to evade punishment. Assuming for the moment that databases of the untold numbers of local, state, and federal peace officers could be accurately maintained and productively utilized, the addition of this search may impair both the government's legitimate desire to limit the length of detentions and the statute's legitimate aim of deterring false representations that could lead to danger if taken as true.

*Alvarez* also provides support for our determination that § 18.2-174 is not susceptible to a "substantial number" of unconstitutional applications. *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (internal quotation marks omitted). In particular, *Alvarez* supports our holding that § 18.2-174 contains a mens rea requirement, which properly limits the scope of the statute and thereby undercuts Chappell's claim of substantial overbreadth. *See ante* at 6-7. Moreover, *Alvarez* emphasizes that criminal statutes should not be read to proscribe representations that "cannot reasonably be interpreted as stating actual facts about an individual." Slip op. at 10 (plurality opinion) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Yet this is precisely how Chappell would have us read § 18.2-174: as prohibiting a child from playing cops and robbers or an adult from donning a police officer costume at a Halloween party even though such persons "cannot reasonably be interpreted as stating" that they are "actual-[ly]" police officers. In fact, *Alvarez specifically rejects* one of the very hypotheticals that Chappell attempts to muster in his favor: the notion that this statute might apply against an actor playing a police officer at "a theatrical performance." Slip op. at 10 (plurality opinion).

Finally, even if some other unconstitutional application of § 18.2-174 could be imagined notwithstanding all of the above, the logic of the controlling concurring opinion in *Alvarez* nevertheless underscores the need to uphold the law. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (noting that where there is a plurality plus a concurrence in the judgment,

the holding should be viewed as the position taken by the Justices who concurred on the "narrowest grounds"). Under Justice Breyer's proportional perspective, there are simply too many legitimate applications of § 18.2-174 to hold the law facially null. Put simply, we decline to strike down a statute that prohibits lies "that are particularly likely to produce harm." *Alvarez*, slip op. at 5 (Breyer, J., concurring in the judgment). The statute does not proscribe all untruths about one's occupation or accomplishments, but only lies that may trick ordinary citizens into the erroneous belief that someone is a peace officer and that may in turn "deceive[]" a person into following a harmful "course of action he would not have pursued but for the deceitful conduct." *Id.* at 6 (internal quotation marks and alterations omitted).

## IV.

The police function serves a significant salutary purpose in protecting public safety, but it also possesses an oppressive potential in the curtailment of liberty. Courts over time have been required to superintend this balance through Fourth Amendment reasonableness doctrine and related measures. To strike down police impersonation statutes, however, would risk expanding the oppressiveness of the police function by adding to the legitimate number of officers an untold flock of faux policemen, all without any corresponding salutary benefit. This strikes us as a complete inversion of the traditional balance courts are charged with maintaining.

In short, this is a poor case in which to facially invalidate a state statute. The Virginia statute serves the important — indeed compelling — interest of promoting public safety by prohibiting an individual from intentionally impersonating a peace officer for a broad range of improper aims, among them attempting to evade state-imposed sanctions. Chappell's conduct is precisely what the Virginia legislature had in mind in enacting this law. To strike down the statute in this instance would exhibit disrespect for that legislative body and would

allow the most far-fetched scenarios to serve as a basis for facially voiding public enactments. Some as-applied challenge may just possibly at some point in time prove meritorious, but we will await that day rather than strike down a statute serving critical public safety goals on purely hypothetical — indeed fanciful — grounds. We expect legislatures to draft statutes that are narrow in focus, applicable to a specific subset of conduct, and reasonably clear. This statute meets those expectations. We do not expect legislatures to foresee and address every conceivable scenario to which a generally worded statute might be imagined to apply. Such laws would be difficult to draft and even more difficult to pass. The realities of the legislative process deserve some recognition and respect.

The First Amendment is a central and essential part of our constitutional life. For that reason, it becomes especially important to identify those instances when free speech values are truly implicated and those when they are not. Falsely identifying oneself as a policeman in order to get out of a speeding ticket is simply not the kind of expressive conduct the Framers of our first and one of our greatest amendments had in mind. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*

WYNN, Circuit Judge, dissenting:

This case involves a content-based restriction on speech—namely, false claims of being a police officer. Just a few weeks ago, the Supreme Court addressed the very question of whether false statements, generally, are afforded First Amendment protection and "reject[ed] the notion that false speech should be in a general category that is presumptively unprotected." *United States v. Alvarez*, No. 11-210, slip op. at 9 (U.S. June 28, 2012) (plurality opinion).[1] A straightforward

---

[1]In *Alvarez*, the Court invalidated the Stolen Valor Act, which made it a crime to "falsely respresen[t]" oneself "to have been awarded any deco-

application of *Alvarez*'s analysis and holding compels the invalidation of the challenged provision at issue in this case. Accordingly, I respectfully dissent from the contrary view of my colleagues in the majority, who seek to avoid *Alvarez*'s holding by undertaking the overbreadth analysis of the three dissenting justices in *Alvarez*. Moreover, even if an overbreadth analysis were appropriate in this case, the challenged provision in the Virginia statute would still fail to pass constitutional muster.

I.

A.

The majority opinion seeks to avoid the clear import of *Alvarez* by cherry-picking language in the plurality and concurring opinions approving of impersonation statutes as generally consistent with the First Amendment. *See, e.g.*, *id.* at 8 (plurality opinion) ("[C]ourts generally have found permissible . . . prohibitions on the false representation that one is speaking as a Government official[.]"). But a complete analysis of *Alvarez*'s references to impersonation statutes reveals that the majority opinion's reliance on this dicta is mistaken.

Most critically, the impersonation statutes referenced in the pertinent dicta, notably the federal impersonation statute, contain elements not present in the challenged portion of the Virginia statute at issue here. Justice Breyer's concurrence notes that "[s]tatutes forbidding impersonation of a public official typically focus on *acts* of impersonation, not mere speech, and may require a showing that, for example, someone was deceived into following a 'course [of action] he would not have pursued but for the deceitful conduct.'"[2] *See id.* at 6

ration or medal authorized by Congress for the Armed Forces of the United States." Slip op. at 15, 19 (Breyer, J., concurring) (citing 18 U.S.C. § 704(b)).

[2]The majority opinion acknowledges that the impersonation statute cited by both the plurality and concurring opinions, 18 U.S.C. § 912, differs

(Breyer, J., concurring in the judgment) (emphasis in original) (quoting *United States v. Lepowitch*, 318 U.S. 702, 704 (1943)); *see also* 18 U.S.C. § 912 (prohibiting assuming or pretending to be a government official and either "act[ing] as such" or "obtain[ing] any money, paper, document, or thing of value") *cited with approval in Alvarez*, slip op. at 9 (plurality opinion).

Here, by contrast, the second part of Va. Code § 18.2-174, unlike the federal impersonation statute cited in *Alvarez*, merely restricts false speech. It does not require any act, does not require that the individual obtain anything of value, and does not include any showing of actual deception or harm. In sum, the provision in the Virginia statute before us, and under which Chappell was convicted, criminalizes mere false speech and is closer to the Stolen Valor Act than to the impersonation statutes discussed in Supreme Court dicta and relied upon by today's majority opinion.

## B.

Indeed, to conduct a proper analysis of the issue in this case, we must respect that in *Alvarez*, the Supreme Court, in invalidating the Stolen Valor Act, unequivocally explained that:

---

from our statute, mainly because it requires that an impersonator of an officer, beyond falsely claiming to be an officer, "act [] as such." *See ante* at 13 n.3. The majority dismisses this distinction as irrelevant, stating that § 18.2-174 is just a part of a "family of statutes," such as the one above, with a "plainly legitimate sweep." *See ante* at 13 n.3. But this conclusory statement is not in line with *Alvarez*, which we are obligated to follow. Justice Breyer's opinion distinguishes the Stolen Valor Act from 18 U.S.C. § 912 by emphasizing that "statutes forbidding impersonation of a public official typically focus on *acts* of impersonation, not mere speech." *Alvarez*, slip op. at 6 (Breyer, J., concurring in the judgment) (emphasis in original). Justice Breyer and Chappell raise the same distinction, and this statute raises the same First Amendment concern as the Stolen Valor Act.

Permitting the government to decree this speech to be a criminal offense, whether shouted from the rooftops or made in a barely audible whisper, would endorse government authority to compile a list of subjects about which false statements are punishable. That governmental power has no clear limiting principle. . . . Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, it would give government a broad censorial power unprecedented in this Court's cases or in our constitutional tradition. The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.

Slip op. at 11.

Because false statements, including the ones at issue here, are not categorically excluded from First Amendment protections, this case, like *Alvarez*, requires an examination of the degree of fit between the governmental interest at stake and the challenged statutory provision. *See id.* at 1 (Breyer, J., concurring in the judgment) ("In determining whether a statute violates the First Amendment, this Court has often found it appropriate to examine the fit between statutory ends and means.").

It is significant to point out that neither the four-justice plurality opinion nor the two-justice concurring opinion undertook an overbreadth analysis. Instead, the four-justice plurality in *Alvarez* invalidated the Stolen Valor Act under "exacting scrutiny," finding that the statute was not "actually necessary to achieve the Government's stated interest," as exacting, or strict, scrutiny requires. *Id.* at 14-15 (plurality opinion). Additionally, in a concurring opinion, Justice

Breyer, joined by Justice Kagan, applied "intermediate scrutiny," or "proportionality," which:

> take[s] account of the seriousness of the speech-related harm the provision will likely cause, the nature and importance of the provision's countervailing objective, the extent to which the provision will tend to achieve those objectives, and whether there are other, less restrictive ways of doing so. Ultimately the Court must consider whether the statute works speech-related harm that is out of proportion to its justifications.

*Id.* at 1 (Breyer, J., concurring in the judgment). The concurring opinion determined that there were less restrictive ways to achieve the important government interest, and that the Stolen Valor Act, therefore, did disproportionate constitutional harm. *Id.* at 10 (Breyer, J., concurring in the judgment).

Here, whether viewed under the strict scrutiny favored by *Alvarez*'s plurality opinion, or the intermediate scrutiny favored by its concurring opinion, the challenged Virginia statutory provision is invalid. While I agree with the majority opinion that the government has a compelling interest in public safety and the repute of its law enforcement officials, *see ante* at 5, I strongly disagree with the contention that the purpose of this statute is to prevent individuals from claiming to be off-duty police officers to avoid speeding tickets. *See ante* at 6 (attempting to avoid a speeding ticket by falsely claiming to be a police officer is "precisely the kind of conduct that the statute was designed to prohibit"). Nothing before us indicates that the challenged clause was intended to prohibit citizens from posing as off-duty officers to dodge speeding tickets. Officers, just like judges and all other citizens, are subject to traffic laws and should be ticketed just like anyone else when they fail to obey them. The government interest here is public safety—not the prevention of non-police officers from

attempting to obtain benefits that police officers should not themselves receive.

*Alvarez* binds us to hold that even if the government interest is compelling, the statute at issue in this case, as written, imposes disproportionate constitutional harm in a way that a more finely-tailored statute would not. Like the Stolen Valor Act, Virginia's statute "applies in family, social, or other private contexts, where lies will often cause little harm. It also applies in political contexts . . . [where] the risk of censorious selectivity by prosecutors is also high." *Alvarez*, slip op. at 8 (Breyer, J., concurring in the judgment). Further, even requiring that the falsehood be intentional, the statute still covers a wide range of government officials—"other peace officer[s]" for example—creating a risk that truthful speech will be chilled as a "speaker might still be worried about being *prosecuted* for a careless false statement, even if he does not have the intent required to render him liable."[3] *Id.*

Moreover, while the majority opinion is correct that Chappell was not engaged in "bar stool braggadocio," *ante* at 15 (quoting *Alvarez*, slip op. at 8 (Breyer, J., concurring in the judgment)), it fails to address the critical issue of whether the statute *would apply* "where it should not be applied, for example, to bar stool braggadocio or, in the political arena, subtly but selectively to speakers that the Government does not

---

[3]In *Alvarez*, Justice Breyer assumed that the Stolen Valor Act included a mens rea requirement, but held that false speech, even intentional lies, receive First Amendment protection. *See Alvarez*, slip op. at 3 (Breyer, J., concurring in the judgment) (reading the statute "favorably to the government as criminalizing only false factual statements made with knowledge of their falsity and with the intent that they be taken as true"). While I do not read a mens rea requirement into the challenged Virginia statutory provision, even if the provision did require that the speaker intend that her statements be taken as true, or that her pretending be believed, it would not affect the analysis here, as Justice Breyer's concurring opinion, along with the plurality opinion, concluded that the Stolen Valor Act, even with a mens rea requirement, violated the First Amendment. *Id.* at 18 (plurality opinion); *id.* at 10 (Breyer, J., concurring in the judgment).

like." *Alvarez*, slip op. at 8 (Breyer, J., concurring in the judgment). In criminalizing merely the false statement that one is employed as a police officer, the statute surely would apply to any number of white lies, including bar stool braggadocio.[4] In short, the statute criminalizes enumerable statements that do not implicate the government's interest in public safety.

At issue then, is whether the government may achieve its interest in a way that places less of a burden upon protected speech. The multitude of states that have more finely-tailored statutes than Virginia's demonstrates that, yes, the government's interest in the repute of its law enforcement officers can be achieved in a less burdensome way. *See, e.g.*, 18 U.S.C. § 912 (criminalizing assuming or pretending to be a government officer and either "act[ing] as such" or obtaining a thing of value); Ala. Code § 13A-10-11 ("A person commits the crime of impersonating a peace officer if he falsely pretends to be a peace officer and does any act in that capacity"); Conn. Gen. Stat. § 53a-130a (requiring an "intent to induce another person to submit to such pretended official authority or otherwise to act in reliance upon that pretense"); Fla. Stat. § 843.08 (criminalizing pretending to be a police officer and

---

[4]There is no basis for the majority opinion's contention that "the statute does not proscribe all untruths about one's occupation or accomplishments, but only lies that may trick ordinary citizens into the erroneous belief that someone is a peace officer and that may in turn deceive a person into following a harmful 'course of action he would not have pursued but for the deceitful conduct.'" *Ante* at 17 (quoting *Alvarez*, slip op. at 5 (Breyer, J., concurring in the judgment)). Critically, there was no such harm here because there is no "legally cognizable harm associated with [Chappell's] false statement." *Alvarez*, slip op. at 6-7 (plurality opinion). The statute was violated by Chappell the moment he said he was a police officer. His claim did not threaten the government's interest in public safety and was easily debunked by the arresting officer. The arresting officer's privacy was not invaded, nor was his safety, or anyone else's, endangered. The arresting officer *should not* have taken a different course of action when Chappell claimed to be an off-duty police officer than he would have taken otherwise because even if Chappell had truly been a police officer, he should have received a citation all the same.

"taking upon himself or herself to act as such, or to require any other person to aid or assist him or her in a matter pertaining to the duty of any such officer"); Mass. Gen. Laws ch. 268, § 33 (requiring that the impersonator "acts as [a police officer] or requires a person to aid or assist him in a matter pertaining to the duty of such officer"); N.J. Stat. § 2C:28-8 (requiring "purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense").

Neither the government nor the majority opinion has explained why a more narrowly tailored statute would not work here. The majority contends that "counterspeech may also be less than effective in cases like Chappell's, where a person claims to be a police officer to evade punishment." *Ante* at 15-16. However, the case before us contradicts the majority opinion's position. The police officer here was able to debunk Chappell's falsity without much difficulty. Further, the need for counterspeech did not exist in this situation. An off-duty police officer should not be able to evade punishment for speeding, so there should be no need to check a database of police officers to determine whether a claim like Chappell's is true.

I particularly disagree with my fine colleagues' attempt to distinguish *Alvarez* on the basis that *unlike the Stolen Valor Act*, "Section 18.2-174 . . . serves interests repeatedly acknowledged by the Supreme Court to be compelling." *Ante* at 9 n.1. I cannot join in that distinction because it reflects a misreading of *Alvarez*. All nine Justices in *Alvarez* agreed that the government's interest in enacting the Stolen Valor Act was a compelling interest. *See Alvarez*, slip op. at 12-13 (plurality opinion) ("[T]o recite the Government's compelling interests is not to end the matter."); *id.*, slip op. at 8 (Breyer, J., concurring in the judgment) ("Like both the plurality and the dissent, I believe the statute nonetheless has substantial justification."); *id.*, slip op. at 17 (Alito, J., dissenting) ("The Stolen Valor Act . . . [was] enacted to address an important

problem."). The constitutional defect of the Stolen Valor Act was not the absence of an underlying compelling interest but instead the lack of fit between its statutory language and unmistakable compelling interest. *See id.*, slip op. at 11 (plurality opinion) ("Where false claims are made to effect a fraud or secure moneys or other valuable considerations . . . it is well established that the Government may restrict speech without affronting the First Amendment. But the Stolen Valor Act is not so limited in its reach." (citation omitted)); *id.*, slip op. at 9 (Breyer, J., concurring in the judgment) ("[I]t should be possible significantly to diminish or eliminate [the statute's constitutional defects] by enacting a similar but more finely tailored statute. . . . [which] might . . . insist upon a showing that the false statement caused specific harm or at least was material."). Indeed, it will not be surprising if Congress responds to the Supreme Court's decision in *Alvarez* with a more narrowly tailored version of the Stolen Valor Act.

Analogously, the constitutional defect in the second part of Va. Code § 18.2-174 is not the absence of a compelling interest—the compelling interest is obvious and is indeed recognized by *Alvarez*—but instead the lack of fit between its statutory language and unmistakable compelling interest.[5]

---

[5]It is important to note that the first part of Section 18.2-174, which prohibits "falsely assum[ing] or exercis[ing] the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer," is not subject to constitutional challenge and that, accordingly, the majority opinion's concern for invalidating a statute that "serves interests repeatedly acknowledged by the Supreme Court to be compelling" is misplaced. Given that this first part of Section 18.2-174 would remain intact irrespective of our decision today, I fail to understand the majority opinion's view that acts of pretending to be a police officer so as to board an airplane or to abduct a child would some how go unregulated by a decision invalidating Section 18.2-174's constitutionally infirm clause. To be clear, such criminal acts—in addition to violating laws against, among other things, kidnapping—would violate the first part of Section 18.2-174, as they involve assuming, through acts, the duties and privileges of being a police officer, such as obtaining the authority to board an airplane or enter a home.

## C.

In sum, the Supreme Court, in its most recent term, addressed a statute that, like this one, criminalized mere false speech. Notwithstanding the unambiguous symmetry between *Alvarez* and the present case, the majority opinion finds it "difficult to understand why" *Alvarez* "binds us." *Ante* at 7. Stare decisis, however, requires that we follow the judgment in *Alvarez* and not, as the majority opinion has done, cherry-pick dicta from Alvarez but decline to apply its holding and reasoning. Although all nine justices of the Supreme Court recognized in *Alvarez* that the Stolen Valor Act served a compelling interest, *see, e.g.*, *Alvarez*, slip op. at 8 (Breyer, J., concurring in the judgment) ("[It] seeks to protect the interests of those who have sacrificed their health and life for their country[ and] serves this interest by seeking to preserve intact the country's recognition of that sacrifice in the form of military honors."), the Supreme Court nonetheless invalidated the statute for want of narrow tailoring. The government interest underlying the Stolen Valor Act—in my view, if not the majority's—is no less compelling than the government's interest in prohibiting a retired police officer from stating that he is a police officer for the purpose of seeking to evade a speeding ticket.[6] Accordingly, as in *Alvarez*, the second part

---

[6]The majority opinion contends that invalidating Section 18.2-174 would place "numerous federal and state impersonation statutes at risk." *Ante* at 14-15. As an initial matter, the majority opinion's contention is undermined by the very statutes it cites because they criminalize more than mere false speech. *See* 18 U.S.C. § 914 (impersonating a creditor of the United States *and* committing a specified act); 18 U.S.C. § 915 (impersonating diplomats *and* acting as such or obtaining a thing of value); 18 U.S.C. § 917 (impersonating Red Cross members "for the purpose of soliciting, collecting, or receiving money or material"). Further, the protections of the First Amendment are not subject to a convenience analysis. The Supreme Court in *Alvarez* provided us with an analytical framework when considering restrictions on false speech. That framework does not ignore the important government interests at stake, but, rather, asks if the restrictions on protected speech are sufficiently narrowly tailored to that interest.

of Section 18.2-174, with its sweeping language criminalizing false statements without any clear limiting principles on the government's power, must fail constitutional scrutiny.

## II.

The majority opinion seeks to avoid *Alvarez*'s holding by adopting the overbreadth analysis that the *Alvarez* dissenting opinion suggests is required yet misapplied by the *Alvarez* plurality and concurrence. *See Alvarez*, slip op. at 15 (Alito, J., dissenting) ("But to strike down a statute on the basis that it is overbroad, it is necessary to show that the statute's overbreadth is substantial, not only in an absolute sense, but also relative to its plainly legitimate sweep. The plurality and the concurrence do not even attempt to make this showing." (quotation marks, alterations and citation omitted)).

Assuming, for the sake of argument, that an overbreadth analysis were appropriate in this case, the challenged provision in the Virginia statute would still not survive. Indeed, the challenged statutory provision requires neither an intent to defraud nor an act undertaken while in the guise of being an officer. Put simply, the challenged portion of the statute captures a substantial amount of legitimate speech and expressive conduct. I would conclude that it is therefore unconstitutionally overbroad.

## A.

It is well-settled that the United States Constitution provides protection "from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). A law is unconstitutionally overbroad if it regulates substantially more speech than the Constitution allows to be regulated.

Contrary to the import of the majority opinion, courts have "long recognized that a statute may be attacked as 'void *on its*

*face*' even though the conduct of the litigant might have been legitimately prosecuted under a more narrowly drafted law." 1 Smolla & Nimmer on Freedom of Speech § 6:4 (2011). Thus, as the Supreme Court has stated,

> we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. We have fashioned this exception to the usual rules governing standing, because of the "***danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application."

*Dombrowski v. Pfister*, 380 U.S. 479, 486-87 (1965) (citations omitted).

Because the prohibition against statutory enforcement that accompanies a finding of overbreadth constitutes "strong medicine," the Supreme Court has counseled lower courts to declare statutes facially overbroad "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Accordingly, "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications . . . ." *New York v. Ferber*, 458 U.S. 747, 771 (1982). Nevertheless, when a statute is in fact facially overbroad, the Supreme Court has readily stricken it down. *See, e.g.*, *United States v. Stevens*, 130 S. Ct. 1577 (2010).

### B.

As the Supreme Court recently underscored, "'[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" *Stevens*, 130 S. Ct. at 1587 (quoting *United States v. Williams*, 553

U.S. 285, 293 (2008)). The Supreme Court thus instructs us clearly to focus not on the particular facts of the case before us, as the majority does, but on the challenged statute itself.

1.

Virginia Code § 18.2-174 states that "[a]ny person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or *who shall falsely assume or pretend to be any such officer*, shall be deemed guilty of a Class I misdemeanor." (emphasis added). Chappell challenges only the latter, emphasized clause of the statute, under which he was convicted.

Neither this statute nor the definitional statute in the same chapter defines the terms "false," "assume," or "pretend." We should therefore accord the terms their ordinary meaning. *See United States v. Thompson-Riviere*, 561 F.3d 345, 355-56 (4th Cir. 2009). The American Heritage Dictionary defines "false" as "[c]ontrary to fact or truth." *American Heritage Dictionary* 638 (4th ed. 2009). It defines "assume" as "[t]o take upon oneself." *Id.* at 110. And it defines "pretend" as "[t]o give a false appearance of; feign." *Id.* at 1390. In other words, this statute criminalizes, contrary to fact, feigning being an officer.

The government suggests that the word "falsely" modifies both assume and pretend and that it injects an intent-to-defraud component into the statute that thereby saves it from unconstitutional overbreadth. First, it is at best unclear that the word "falsely" modifies the word pretend and not just the word assume. *See* Va. Code § 18.2-174 ("or who shall falsely assume or pretend to be any such officer. . . ."). Because the definition of "pretend" inherently includes an element of falsity, as the dictionary definition quoted above illustrates, it makes little sense that "falsely" should modify "pretend."

Further, even assuming for the sake of argument that falsely modifies pretend, I fail to see how one would leap from that to "a defendant must hold him or herself out as a police officer in a way that could at least potentially mislead or be for an improper purpose[,]" as the government contends. Appellee's Br. at 10. The statute does not even hint at such limiting language; it does quite the opposite.

While the first part of the statute prohibits the act of holding oneself out as a police officer, the second part contains no act requirement and criminalizes mere false speech. The first part of the statute criminalizes "[a]ny person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer . . . ." Va. Code § 18.2-174. The first part of the statute implies that beyond claiming or pretending to be an officer, a defendant must act as such and "hold him or herself out as a police officer . . . ." Appellee's Br. at 10. To interpret the second clause as requiring the same thing would render it superfluous, in violation of the rules of statutory construction. *See Scott v. United States*, 328 F.3d 132, 139 (4th Cir. 2003) (stating that courts must "give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous"). Therefore, the second clause is best read as applying to situations where individuals claim or even pretend to be police officers, even if they do nothing associated with the "functions, powers, duties and privileges" of being an officer, and even if they do not intend to defraud another.

Crucially, the second part of the statute applies even where, as here, an individual claims to be an off-duty police officer. Chappell made no claim to be on-duty as a police officer, speeding for some legitimate purpose, but only claimed that he was employed as a police officer. In doing so, he was not acting as a police officer or assuming any of the "functions, powers, duties and privileges" of being an officer, but simply stating a false fact about his employment.

Moreover, the statute does not require any particular intent when claiming to be a police officer. Looking at the statute in context, the very next section in the pertinent code chapter, Virginia Code § 18.2-174.1, expressly criminalizes only "willfully impersonat[ing], with the intent to make another believe he is" certain other officials such as a fire fighter. Section 18.2-174.1 hails from the exact same year as the statute at issue in this case—1975—and has always contained a mens rea element. *See* Va. Code Ann. § 18.2-174.1, Historical and Statutory Notes. Therefore, when the Virginia legislature enacted these statutes, it clearly knew how to write such elements into statutes. But in the statute at issue here, Va. Code § 18.2-174, it chose not to do so. This Court is not at liberty to override that decision but rather must respect the choice of the state legislature that drafted the statute.

As stated above, giving the terms in the second clause their natural meaning, this statute criminalizes, contrary to fact, feigning being an officer. This aspect of the statute is undeniably broad. It covers not only someone asserting that he is a police officer in the hopes of avoiding a ticket, but also, among other things: children playing cops and robbers on the front lawn; trainees at a police academy role-playing; and actors in plays in which peace officers are characters. Indeed, it would have covered Chappell, even if he had not attempted to avoid a ticket but instead expressed his remorse for violating a traffic law, stating, "I am a police officer and should have known better." Regardless of whether strict or intermediate scrutiny applies, I believe that this statute reaches a substantial number of impermissible applications and is thus overbroad.[7]

---

[7]As noted, Virginia is far from the only jurisdiction with an impersonation statute. To be sure, there are many such state statutes, as well as a federal statute. Notably, the vast majority of those statutes require something more than just "pretending" to be held criminally liable. They require: a mens rea such as intent to defraud another, *see, e.g.*, Conn. Gen. Stat. § 53a-130a, Ga. Code § 16-10-23, and N.J. Stat. § 2C:28-8; or acting as an officer, *see, e.g.*, 18 U.S.C. § 912, Ala. Code § 13A-10-11, Fla. Stat. § 843.08, and Mass. Gen. Laws ch. 268, § 33. Looking to other impersonation statutes only underscores that the challenged clause of the Virginia statute, criminalizing mere pretending, or false speech, is problematic.

## 2.

Of course, my conclusion that the challenged provision in the Virginia statute is overbroad does not in any way indicate that I question the importance of impersonation statutes as such. I fully agree with the majority opinion that state impersonation statutes can "'protect citizens who would be harmed or deceived by those acting under the color of authority.'" *Ante* at 5 (quoting *People v. Ellis*, 696 N.E.2d 1, 3 (Ill. App. Ct. 1998)). However, the challenged statutory provision does not require "acting under the color of authority" but merely "pretending" to be an officer for whatever purpose. That extreme breadth cannot pass constitutional muster.[8]

The government does not even attempt to argue that regulating such speech and conduct would be constitutional. Neither does the majority opinion. Instead, both simply suggest that these scenarios are far-fetched and that the statute would not be enforced in such situations. First, I cannot agree that they are far-fetched. It seems highly likely that these scenarios occur with substantially greater frequency than someone pretending to be an officer for nefarious purposes. Second, an otherwise overbroad statute cannot be saved based on its history of past enforcement. *See, e.g.*, *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 260 n.8 (4th Cir. 2003) (noting that even though a school dress code had been enforced only to ban "images of gunmen aiming high-powered firearms," this was insufficient to establish a limiting construction when the dress code did "not even remotely sug-

---

[8]The majority opinion states that "[f]alsely identifying oneself as a policeman in order to get out of a speeding ticket is simply not the kind of expressive conduct the Framers of our first and one of our greatest amendments had in mind." *Ante* at 18. That may well be. The Framers surely also did not craft the First Amendment to allow the likes of Mr. Alvarez to falsely purport to have received the Congressional Medal of Honor in a "pathetic attempt to gain respect that eluded him." *Alvarez*, slip op. at 1 (plurality opinion). Nevertheless, the Supreme Court struck the statute as violative of the First Amendment.

gest" such a limitation). Convenient to its analysis, the majority opinion has chosen to ignore that this Court, just last year, struck an unconstitutionally overbroad statute that had never been enforced against constitutionally protected expressive conduct. *See Legend Night Club v. Miller*, 637 F.3d 291, 300 (4th Cir. 2011). Had the majority followed *Legend Night Club*, then it would have recognized the irrelevance of its claim that Chappell's challenge is crippled by his failure to "point to even one" case where Hollywood actors, Halloween partiers, or others were prosecuted. *Ante* at 11.

Further, assertions about future enforcement also cannot rescue a constitutionally infirm speech regulation. As the Supreme Court recently made clear, "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 130 S. Ct. at 1591; *see also Legend Night Club*, 637 F.3d at 300-01. The majority opinion seems to suggest that prosecutors will interpret the statute much more restrictively than its face suggests, presumably thereby sparing the statute from constitutional problems. *See ante* at 9. But as the Supreme Court noted in *Stevens*, the need to point out that the challenged statute would be applied more restrictively than its language permits simply underscores the statute's overbreadth. *Stevens*, 130 S. Ct. at 1591 ("The Government's assurance that it will apply [the challenged statute] far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading.").

The majority opinion posits that striking down the challenged clause at issue here "would exhibit disrespect" for the Virginia legislature. *Ante* at 17-18. First, while I am highly sensitive to the federalism concerns this case presents, I query what role the majority opinion supposes our federal Constitution, with both its First Amendment and Supremacy Clause, should play. Further, I underscore that Chappell does not

challenge Virginia Code § 18.2-174 in its entirety but merely one clause thereof. And the problematic clause can, and therefore should, be severed from the remainder of the statute. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3161 (2010) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (quotation marks omitted)). This case is therefore not about "strik[ing] down the statute," as the majority would have it, *ante* at 17, but merely severing out an overbroad clause while leaving the remainder of the statute intact.

Finally, it is out of respect for the Virginia legislature that I would send the infirm clause back to that body for amendment rather than pencil in some additional element concocted by this Court in order to save the statute's problematic clause. As I note above, different states (and the federal government) have adopted various additional elements, such as mens rea requirements, that take those impersonation statutes out from under a constitutional cloud. It is for the Virginia legislature alone to decide which formulation best matches its state's needs.

## III.

In sum, a straight forward application of *Alvarez*'s analysis and holding compels the invalidation of the challenged provision of the impersonation statute at issue in this case. Under the analysis set forth in the plurality and concurring opinions in *Alvarez*, the second part of Va. Code § 18.2-174 is not narrowly tailored and, therefore, invalid. Further, even if we were to engage in the overbreadth analysis that the *Alvarez* dissenting opinion suggests is required, I would conclude that the second clause of the Virginia impersonation statute captures a substantial amount of legitimate speech and expressive conduct in addition to properly regulated speech and expressive conduct. I would, therefore, find it overbroad and unen-

forceable. And because Chappell was expressly convicted under the infirm clause, his conviction and sentence for the impersonation charge would need to be vacated. For all these reasons, I respectfully dissent.