Affirmed by published opinion. Judge WYNN wrote the majority opinion, in which Judge DAVIS joined. Senior Judge HAMILTON wrote a separate opinion concurring in part and dissenting in part.
OPINION
WYNN, Circuit Judge:
“Under the doctrine of over-breadth, a statute violates the First Amendment it if prohibits a substantial amount of protected expression.” PSINet, Inc. v. Chapman, 362 F.3d 227, 234 (4th Cir.2004). Defendants appeal a permanent injunction prohibiting the enforcement of a Maryland statute due to its overbreadth. We conclude that the statute — which limits the range of permissible conduct, attire, and entertainment at establishments licensed to serve alcoholic beverages — prohibits a broad swath of expression protected by the First Amendment and is not susceptible to a limiting construction. Accordingly, we affirm the permanent injunction prohibiting enforcement of the statute.
I.
Plaintiffs The Legend Night Club (“The Legend”) and International Nite Life Enterprises, Inc. (“The Classics”) operate adult entertainment establishments in Prince George’s County, Maryland. Plaintiffs are licensed by the Prince George’s County Board of License Commissioners *295 to serve alcoholic beverages at these establishments.
In 2005, Plaintiffs filed separate complaints challenging the constitutionality of statutory amendments, which, if enforced, would prohibit them from providing both alcoholic beverages and adult entertainment. The complaint filed by The Legend named as defendants the State of Maryland, Prince George’s County, the Prince George’s County Board of License Commissioners, Governor Robert Ehrlich, and the individual members of the Prince George’s County Board of License Commissioners (Franklin D. Jackson, Earl J. Howard, Nam K. Kim, Dennis B. Miller, and Shaihi Mwalimu). The Classics’ complaint included the same entities and individuals as defendants, with the exception of Governor Ehrlich. The Classics’ complaint also added as a defendant Norma Lindsay, the Chief Liquor Inspector for the Board of License Commissioners. In October 2005, based on the joint stipulations of the parties, the district court dismissed the claims against Governor Ehrlich and the State of Maryland. The State later intervened to defend the statute’s constitutionality under 28 U.S.C. § 2403(b).
At issue in both cases was a statutory amendment that added Prince George’s County to a list of jurisdictions in which certain attire and conduct is prohibited in establishments licensed to sell alcoholic beverages. Specifically, the statute — effective on October 1, 2005 — forbids a person from:
(1) Be[ing] employed or used in the sale or service of alcoholic beverages in or upon the licensed premises while the person is unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;
(2) Be[ing] employed or act[ing] as a hostess or actfing] in a similar-type capacity to mingle with the patrons while the hostess or person acting in a similar-type capacity is unclothed or in attire, costume or clothing as described in paragraph (1) of this subsection;
(1) Encouragpng] or permitting] any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person; or
(4) Permitting] any employee or person to wear or use any device or covering exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion of it.
Md.Code, Art. 2B § 10-405(c) (2005). The statute also restricts certain entertainment, specifically prohibiting a person from:
(1) Permitting] any person to perform acts of or acts which simulate:
(i) The act of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;
(ii) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or
(iii) The display of the pubic hair, anus, vulva or genitals;
(2) Permitting] any entertainer whose breasts or buttocks are exposed (subject to the restrictions of paragraph (1) of this subsection) to perform closer than six feet from the nearest patron; or
(3) Permitting] any person to use artificial devices or inanimate objects to depict, perform or simulate any activity *296 prohibited by paragraph (1) of this subsection.
Id. § 10-405(d).
Under the. statute, an establishment found engaging in prohibited activities would have its license to sell alcoholic beverages revoked. Id. § 10 — 405(b) (2005) (“Any license issued under the provisions of this article shall be revoked if ... any of the activities listed in this section are found to occur on any premises or location for which the license was issued.”).
The statute also exempts, under a grandfather clause, certain long-term license holders from potential license revocation. That clause provides an exemption for:
a current alcoholic beverages license holder that currently conducts an activity that is made unlawful by this Act only if the license holder:
(a) received approval from the Board to conduct the activity on or before August 15,1981; and
(b) has owned the licensed premises continuously since September 1, 1981.
2005 Md. Laws 262 § 2.
Plaintiffs contend that the statute as amended is overbroad in violation of the First Amendment. Plaintiffs also contend that the grandfather clause under the statute was intentionally drafted to provide an exemption for the Ebony Inn, an establishment owned by a former state senator. As such, Plaintiffs argue that the grandfather clause violated the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights.
Plaintiffs sought a prohibitory injunction and a declaration that the statute as amended was unconstitutional. On September 30, 2005, the district court entered a temporary restraining order enjoining Defendants from enforcing the statute as amended. On March 27, 2006, the district court issued a preliminary injunction forbidding enforcement of the statute. The district court then stayed and administratively closed the cases on July 17, 2006, recognizing that they “may be affected, and possibly mooted, by action in the next session of the Maryland Legislature.” By letter of December 20, 2007, the State of Maryland advised the district court that although “[t]he Court issued the stay to provide the General Assembly an opportunity to amend the statute at issue in this litigation, ... [djuring the 2007 Legislative Session, the General Assembly declined to take action on this statute.” The State of Maryland also moved to reopen the cases as expressly allowed by the district court’s orders. The district court granted the State’s motion on April 2, 2008 and, in the same order, consolidated The Legend’s and The Classics’ cases.
After a bench trial, the district court issued a written opinion on April 1, 2009. The court held that the statute as amended was unconstitutionally overbroad and not readily susceptible to a limiting construction. The court further held that the grandfather clause violated the Equal Protection Clause and declined to sever the grandfather clause from the statute. Accordingly, on April 30, 2009, the district court entered a permanent injunction stating that “[njeither Defendant Prince George’s County Board of License Commissioners nor any other person or entity shall take action to close Plaintiffs’ premises, or to suspend or revoke their licenses, based upon any alleged violation of Md. Ann.Code, Article 2B, Section 10-405, as amended by H.B. 1133.” The State of Maryland and individual defendants Franklin D. Jackson, Earl J. Howard, Nam K. Kim, Dennis B. Miller, and Shaihi Mwalimu (collectively “Defendants”) appealed.
*297 II.
Defendants first argue that the district court erred in finding the statute over-broad because there was no evidence that the law would be applied unconstitutionally. They further contend that even if the statute is facially overbroad, it is susceptible to a limiting construction capable of ensuring its constitutionality.
The district court issued a permanent injunction after concluding that the statute was unconstitutionally over-broad. Under “well-established principles of equity,” a plaintiff seeking a permanent injunction must demonstrate:
(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). We review the grant of a permanent injunction for an abuse of discretion. Virginia Soc’y for Human Life, Inc. v. Fed. Election Comm’n, 263 F.3d 379, 392 (4th Cir.2001). However, the “underlying factual findings are reviewed for clear error, and legal conclusions are reviewed de novo.” Id. Because the district court issued a permanent injunction after concluding that the statute was unconstitutionally overbroad, we begin our inquiry with a de novo review of the district court’s holding.
Under the overbreadth doctrine, a plaintiff
whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.
Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Consequently, even if Plaintiffs have no intention of offering artistic performances at their establishments, they are entitled to mount the instant facial challenge to the statute to protect the rights of those who wish to do so. Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 512 (4th Cir.2002) (“Carandola I”) (“[T]he overbreadth doctrine allows Carandola to assert the First Amendment rights of those who do wish to ‘present or act’ in a ballet or other theatrical production, even if Carandola does not.”).
Plaintiffs argue that the statute is unconstitutionally overbroad because it “limits activity which can include a ballet, a Shakespearian play, and other mainstream productions” of artistic merit. Brief of Appellee at 18. Because the prohibition against statutory enforcement that accompanies a finding of overbreadth constitutes “strong medicine,” the Supreme Court has counseled lower courts to declare statutes facially overbroad “sparingly and only as a last resort.” Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Accordingly, “where conduct and not merely speech is involved, ... the over-breadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.” Id. at 615, 93 S.Ct. 2908; see also New York v. Ferber, 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (“[A] law should not be invalidated for over-breadth unless it reaches a substantial number of impermissible applications .... ”).
*298 The purpose for which legislation is adopted dictates the level of scrutiny applied to ascertain whether the law exceeds its “plainly legitimate sweep.” “If the regulation was adopted to burden disfavored viewpoints or modes of expression, a court applies strict scrutiny.” Carandola I, 303 F.3d at 512. In contrast, content-neutral statutes receive intermediate scrutiny. See City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). We have previously noted that
measures to regulate sexually explicit entertainment outside the home receive intermediate scrutiny if they are not premised on a desire to suppress the content of such entertainment, but rather to address the harmful secondary effects of such entertainment: higher crime rates and lower property values, and unwanted interactions between patrons and entertainers, such as public sexual conduct, sexual assault, and prostitution.
Carandola I, 303 F.3d at 513 (citations omitted).
Defendants contend that the statute was amended to address the secondary effects of presenting nude dancing in establishments that serve alcohol. Brief of Appellant at 8. Nothing in the amendment itself, however, indicates the motivation for its adoption. Cf. City of Erie v. Pap’s A.M., 529 U.S. 277, 290, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (plurality opinion) (noting that the preamble to the ordinance at issue stated purpose of prohibiting entertainment that “provides] an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects”). Nor did Defendants, for example, present any studies relied upon by the Maryland General Assembly to establish the secondary effects supposedly targeted by the amendment.
Instead, Defendants ask this Court to infer legislative purpose from the fact that letters from various municipalities in support of the amendment indicated a general concern for certain secondary effects. However, we will not impute the motives of entities lobbying for legislation to the General Assembly itself See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 120, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (stating that the Court “ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal”). We also decline Defendants’ invitation to infer that because a triple-homicide occurred near a strip club before the adoption of the amendment, the General Assembly intended, with the amendment, to reduce such violence — particularly when Defendants offered no evidence that the legislature even considered this particular incident in conjunction with the amendment.
When considering a substantially similar statute that also lacked evidence of legislative intent in Carandola I, this Court applied intermediate scrutiny. See Carandola I, 303 F.3d at 514 (“Even though the Commission has submitted no direct evidence of legislative motive, we believe that precedent requires us to evaluate the challenged restrictions as content-neutral provisions aimed at secondary effects.”). In doing so, we noted that the challenged statute was part of a larger body of alcohol control law “enacted to prevent illegal and disorderly conduct that may arise where alcohol is served to the public.” Id. at 514-15 (citation omitted).
The statute at issue here is similarly part of a broad article in the Maryland Code regulating the sale of alcohol “for the protection, health, welfare and safety” of *299 the people of Maryland. See Md.Code, Art. 2B § 1-101 (2005); see also State v. Petrushansky, 183 Md. 67, 71, 36 A.2d 533, 535 (1944) (stating that statutory interpretation of a provision in Article 2B requires the court to consider all parts of the Article together, “as they form part of a general system”). Moreover, Article 2B specifically contemplates license revocation when “necessary to promote the peace or safety of the community in which the place of business is situated.” Md.Code, Art. 2B, § 10-401 (2005). Thus, as in Carandola I, we conclude that at least one purpose of the statute was to address the secondary effects resulting from the combination of alcohol and nude dancing. “Within the limited field of regulations on public exhibitions of adult entertainment, this suffices for us to treat the [statute] as content-neutral and so subject only to intermediate scrutiny.” Carandola I, 303 F.3d at 515 (citation omitted).
To withstand intermediate scrutiny, the challenged regulation must “materially advance[] an important or substantial interest by redressing past harms or preventing future ones.” Satellite Broad. & Commc’ns Ass’n v. FCC, 275 F.3d 337, 356 (4th Cir.2001). Again, Defendants contend that the statute was amended to address the secondary effects arising from the combination of adult entertainment and alcohol consumption. As noted by the district court, however, “Defendants have not produced evidence of harmful secondary effects in Prince George’s County, Maryland.”
“This failure might not pose a problem if the challenged restrictions applied only to bars and clubs that present nude or topless dancing.” Carandola I, 303 F.3d at 516. “Such entertainment has ‘a long history of spawning deleterious effects,’ including ‘prostitution and the criminal abuse and exploitation of young women,’ and in most cases a city or state need carry only a minimal burden to demonstrate its interest in regulation of such activity.” Id. (quoting Steakhouse, Inc. v. City of Raleigh, 166 F.3d 634, 637 (4th Cir.1999)). However, even assuming arguendo that the statute materially advances an important and current governmental interest, the nature of Plaintiffs’ overbreadth challenge compels us to consider whether the statute adversely affects a substantial amount of protected speech beyond that restricted under the statute’s “plainly legitimate sweep.” Id. at 515; see also Satellite Broad. & Commc’ns Ass’n, 275 F.3d at 356 (“If the regulation materially advances some important or substantial interest, we then ... ask whether the regulation is narrowly tailored to serve that interest.”); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) (“[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.”).
The statute imposes restrictions that extend well beyond strip clubs and other establishments primarily offering adult entertainment. Like the regulation at issue in Carandola I, “the plain language of the restrictions prohibits on licensed premises any entertainment that ‘simulate[s]’ sexual behavior, even if performers are fully clothed or covered, and even if the conduct is integral to the production — for example, a political satire, a Shakespeare play depicting young love, or a drama depicting the horrors of rape.” Carandola I, 303 F.3d at 516. These restrictions “have the same prohibitory effect on much non-erotic dance — such as a ballet in which one dancer touches another’s buttock during a lift — and all nudity or simulated nudity, however brief, in produc *300 tions with clear artistic merit — such as the Pulitzer Prize winning play, Wit” Id. We recognize that “[e]xpressive conduct enjoys less protection than does pure speech and restrictions on its exercise are more likely to be constitutionally permissible.” Steakhouse, 166 F.3d at 637 (citation omitted). However, a statute prohibiting such a broad swath of expressive conduct cannot pass constitutional muster.
Defendants do not argue that restricted artistic performances produce the secondary effects purportedly targeted by the statute. Instead, they argue that the statute is immune from this over-breadth challenge because no establishment licensed to serve alcohol in Prince George’s County presents productions of artistic merit that would fall within the statute’s ambit. “However, where the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an over-breadth attack.” City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800 n. 19, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (citation omitted). The Constitution provides protection “from overbroad laws that chill speech within the First Amendment’s vast and privileged sphere.” Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). As noted by the district court, the statute “would prohibit any existing, or new, liquor licensee from starting to present serious artistic performers that would violate the restrictions.” Thus, as in Carandola I, we conclude that the statute at issue reaches a substantial number of impermissible applications.
Defendants attempt to distinguish our holding in Carandola I on the basis that, in that case, the Commission charged with enforcing the challenged regulation conceded that the law would reach artistic productions at a number of venues licensed to serve alcohol. In contrast, Defendants made no such concessions here and instead argue, based on the history of the statute’s enforcement, that the statute would be applied only to adult entertainment establishments. Essentially, Defendants implore this Court to ignore the plain language of the statute and rely instead on the government’s assurances that the statute would not be unconstitutionally enforced. In support of this plea, Defendants submitted affidavits from enforcement authorities in nine counties where the statute currently applies, each stating that in the relevant jurisdiction, § 1CM05 has never been enforced against an establishment offering productions of clear artistic merit. Nevertheless, no limitation on the scope of the sweeping prohibitions exists in the statute.
Generally, however, we will not strike down a statute as facially overbroad if its constitutionality can be preserved through a “limiting construction” or “partial invalidation” capable of “removing] the seeming threat or deterrence to constitutionally protected expression.” Broadrick, 413 U.S. at 613, 93 S.Ct. 2908; see also Carandola I, 303 F.3d at 512. Indeed, as a general principle “every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.” Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (quoting Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895)). That said, we will not alter a state statute unless the regulation is “readily susceptible” to the proffered construction. Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1084 (4th Cir. 2006) (“Carandola II”); see also Va. Soc. for Human Life, Inc. v. Caldwell, 152 F.3d 268, 270 (4th Cir.1998) (explaining that *301 “federal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent” (quoting Boos v. Barry, 485 U.S. 312, 330-31, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (emphasis added))). Indeed, we must be careful not to encroach upon the domain of a state legislature by “rewriting] a law to conform it to constitutional requirements.” PSINet, 362 F.3d at 236 (quoting Reno v. Am. Civil Liberties Union, 521 U.S. 844, 884-85, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). Therefore “narrowing constructions are only appropriate when ‘the text or other source of congressional intent’ identifies a clear line that a court could draw.” Id. (quoting Reno, 521 U.S. at 884, 117 S.Ct. 2329).
While Defendants argue that the statute has been, and will be, enforced only against adult entertainment establishments, they do not propose a way to read the statute such that it would apply only to those licensees. A history of limited enforcement is insufficient to establish the susceptibility of a statute to a limiting construction, particularly when the language of the statute itself lacks any limitation on the scope of enforcement. See Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 260 n. 8 (4th Cir.2003) (noting that even though school dress code had been enforced only to ban “images of gunmen aiming high-powered firearms,” this was insufficient to establish a limiting construction when the dress code did “not even remotely suggest” such a limitation); see also United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 1591, 176 L.Ed.2d 435 (2010) (“[T]he First Amendment protects against the Government; it does not leave us at the mercy of the noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.”). Indeed, the language of the statute here suggests no limit whatsoever to its enforcement, and the Defendants’ failure to “even suggest a possible limiting construction” is consistent with this Court’s conclusion that the statute is not readily susceptible to a limiting construction. Carandola II, 470 F.3d at 1078 (noting absence of suggested limiting construction in Carandola I court’s finding that statute was not readily susceptible to limiting construction).
The Maryland General Assembly could, of course, appropriately limit the statute. Notably, to rescue the statute at issue in Carandola I from unconstitutional overbreadth, the North Carolina legislature amended it to include a “carve-out” provision stating that:
[t]his section does not apply to persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value.
N.C. Gen.Stat. § 18B-1005.1(c) (2005); see Carandola II, 470 F.3d at 1084; Imaginary Images, Inc. v. Evans, 612 F.3d 736, 751 (4th Cir.2010) (“Virginia’s prohibition on mixed beverages at venues like Paper-moon is within the statutes’ legitimate sweep. And cultural venues offering ‘matters of serious literary, artistic, scientific, or political value’ are properly exempted.”). However, where a statute requires an amendment to pass constitutional muster, we cannot usurp the legislature’s role and rewrite it. See PSINet, 362 F.3d at 236.
The dissent argues that subsection (d) of the statute may be excised, leaving the remainder of the statute, including subsection (c), fully operative. However, to make it fully operative, in addition to severing *302 subsection (d), the dissent also imposes a narrowing construction on subsection (c) that, like excision of subsection (d), was never suggested by Defendants. While, it might be argued that the Maryland Code’s general severability provision and the “[separability” provision in its alcoholic beverages article suggest that partial invalidation should be attempted here, Md. Code, Art. 1 § 23, Md.Code, Art. 2B § 1-104, the dissent relies upon a complex combination of unsolicited partial invalidation and narrowing construction in an effort to save the statute. These efforts to save the statute stand in stark contrast to the inaction of the Maryland legislature. After the district court issued its Preliminary Injunction Order prohibiting enforcement of the statute at issue, it stayed the proceedings to give the Maryland legislature an opportunity to amend the statute. However, the legislature “declined” to take action on this statute in the 2007 session, and failed to take any action during the 2008 and 2009 sessions before the district court’s permanent injunction of April 2009. Like the Supreme Court,
we are wary of legislatures who would rely on our intervention, for “[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside” to announce to whom the statute may be applied. United, States v. Reese, 92 U.S. 214, 221 [23 L.Ed. 563] (1876). “This would, to some extent, substitute the judicial for the legislative department of the government.” Ibid.
Ayotte v. Planned Parenthood of Northern New Eng., 546 U.S. 320, 330, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006).
The dissent’s efforts to save the statute would usurp the legislature’s role, rewrite the statute, and leave it without the important carve-out provision for matters of literary, artistic, scientific, or political value relied upon by this Court in Carandola II, 470 F.3d at 1084-85, and Imaginary Images, 612 F.3d at 751.
In summary, because we hold that the statute as amended (1) prohibits a substantial amount of expression that is protected by the First Amendment and (2) is not readily susceptible to a limiting construction, we conclude that the district court did not err in its determination that the statute was unconstitutionally overbroad.
Given that conclusion, while the district court did not discuss the test for granting a permanent injunction, we discern no abuse of discretion in the court’s decision to issue the injunction. As to irreparable injury, it is well established that “[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (citation omitted). Further, the threatened injury in this case (i.e., license revocation) constituted “direct penalization, as opposed to incidental inhibition” of First Amendment rights, thus making it the sort that could not be remedied absent an injunction. Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir.1989) (quoting Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir.1983)). Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms. Joelner v. Vill. of Wash. Park, 378 F.3d 613, 620 (7th Cir.2004). Regarding the third requirement for injunctive relief, the threatened injury to Plaintiffs easily outweighs whatever burden the injunction may impose. At a minimum, each Plaintiff faces a loss of its license coupled with a loss of valuable business opportunities. Carandola I, 303 F.3d at 521. By contrast, the State of Maryland is in no way harmed by issuance of an injunction that *303 prevents the state from enforcing unconstitutional restrictions. See Joelner, 378 F.3d at 620 (questioning the “harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties”) (quotation omitted). And fourth, upholding constitutional rights is in the public interest. Carandola I, 303 F.3d at 521. Because each of the factors that we consider when deciding whether to grant injunctive relief weighs in favor of Plaintiffs, we conclude that the district court did not abuse its discretion by issuing a permanent injunction against the enforcement of the statute.
III.
Defendants also argue that the district court erred in concluding that the statute’s grandfather clause, exempting certain long-term licensees from the statute’s ambit, violated the Equal Protection Clause of the Fourteenth Amendment. Because the statute is facially overbroad, its enforcement is “totally forbidden.” Carandola I, 303 F.3d at 512 (citing Broadrick, 413 U.S. at 613, 93 S.Ct. 2908, for the proposition that if a statute is overbroad and cannot be rendered constitutional through a limiting construction or partial invalidation, “any enforcement” thereof is “totally forbidden”). We therefore do not need to address this exemption.
IV.
In conclusion, we affirm the district court’s permanent injunction against the enforcement of Md.Code Art. 2B, § 10-405 as amended by H.B. 1133.

AFFIRMED