WYNN, Circuit Judge,
dissenting:
This case involves a content-based restriction on speech — namely, false claims of being a police officer. Just a few weeks ago, the Supreme Court addressed the very question of whether false statements, generally, are afforded First Amendment protection and “reject[ed] the notion that false speech should be in a general category that is presumptively unprotected.” United States v. Alvarez, — U.S. -, 132 S.Ct. 2537, 2546-47, 183 L.Ed.2d 574 (2012) (plurality opinion).[1] A straightforward application of Alvarez’s analysis and holding compels the invalidation of the challenged provision at issue in this case. Accordingly, I respectfully dissent from the contrary view of my colleagues in the majority, who seek to avoid Alvarez’s holding by undertaking the overbreadth analysis of the three dissenting justices in Alvarez. Moreover, even if an over-breadth analysis were appropriate in this case, the challenged provision in the Virginia statute would still fail to pass constitutional muster.
I.
A.
The majority opinion seeks to avoid the clear import of Alvarez by cherry-picking language in the plurality and concurring opinions approving of impersonation statutes as generally consistent with the First Amendment. See, e.g., id. at 2454-46 (plurality opinion) (“[CJourts generally have found permissible ... prohibitions on the false representation that one is speaking as a Government official[.]”). But a complete analysis of Alvarez’s references to impersonation statutes reveals that the majority opinion’s reliance on this dicta is mistaken.
Most critically, the impersonation statutes referenced in the pertinent dicta, notably the federal impersonation statute, contain elements not present in the challenged portion of the Virginia statute at issue here. Justice Breyer’s concurrence notes that “[sjtatutes forbidding impersonation of a public official typically focus on acts of impersonation, not mere speech, and may require a showing that, for example, someone was deceived into following a *401 ‘course [of action] he would not have pursued but for the deceitful conduct.’ ”[2] See id. at 2554 (Breyer, J., concurring in the judgment) (emphasis in original) (quoting United States v. Lepowitch, 318 U.S. 702, 704, 63 S.Ct. 914, 87 L.Ed. 1091 (1943)); see also 18 U.S.C. § 912 (prohibiting assuming or pretending to be a government official and either “act[ing] as such” or “obtain[ing] any money, paper, document, or thing of value”) cited with approval in Alvarez, 132 S.Ct. at 2546-47 (plurality opinion).
Here, by contrast, the second part of Va.Code § 18.2-174, unlike the federal impersonation statute cited in Alvarez, merely restricts false speech. It does not require any act, does not require that the individual obtain anything of value, and does not include any showing of actual deception or harm. In sum, the provision in the Virginia statute before us, and under which Chappell was convicted, criminalizes mere false speech and is closer to the Stolen Valor Act than to the impersonation statutes discussed in Supreme Court dicta and relied upon by today’s majority opinion.
B.
Indeed, to conduct a proper analysis of the issue in this case, we must respect that in Alvarez, the Supreme Court, in invalidating the Stolen Valor Act, unequivocally explained that:
Permitting the government to decree this speech to be a criminal offense, whether shouted from the rooftops or made in a barely audible whisper, would endorse government authority to compile a list of subjects about which false statements are punishable. That governmental power has no clear limiting principle---- Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, -it would give government a broad censorial power unprecedented in this Court’s cases or in our constitutional tradition. The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.
132 S.Ct. at 2547-48.
Because false statements, including the ones at issue here, are not categorically excluded from First Amendment protections, this case, like Alvarez, requires an examination of the degree of fit between the governmental interest at stake and the challenged statutory provision. See id. at 2551 (Breyer, J., concurring in the judgment) (“In determining whether a statute violates the First Amendment, this Court has often found it appropriate to examine the fit between statutory ends and means.”).
*402 It is significant to point out that neither the four-justice plurality opinion nor the two-justice concurring opinion undertook an overbreadth analysis. Instead, the four-justice plurality in Alvarez invalidated the Stolen Valor Act under “exacting scrutiny,” finding that the statute was not “actually necessary to achieve the Government’s stated interest,” as exacting, or strict, scrutiny requires. Id. at 2549 (plurality opinion). Additionally, in a concurring opinion, Justice Breyer, joined by Justice Kagan, applied “intermediate scrutiny,” or “proportionality,” which:
take[s] account of the seriousness of the speech-related harm the provision will likely cause, the nature and importance of the provision’s countervailing objective, the extent to which the provision will tend to achieve those objectives, and whether there are other, less restrictive ways of doing so. Ultimately the Court must consider whether the statute works speech-related harm that is out of proportion to its justifications.
Id. at 2551 (Breyer, J., concurring in the judgment). The concurring opinion determined that there were less restrictive ways to achieve the important government interest, and that the Stolen Valor Act, therefore, did disproportionate constitutional harm. Id. at 2556 (Breyer, J., concurring in the judgment).
Here, whether viewed under the strict scrutiny favored by Alvarez’s plurality opinion, or the intermediate scrutiny favored by its concurring opinion, the challenged Virginia statutory provision is invalid. While I agree with the majority opinion that the government has a compelling interest in public safety and the repute of its law enforcement officials, see ante at 392, I strongly disagree with the contention that the purpose of this statute is to prevent individuals from claiming to be off-duty police officers to avoid speeding tickets. See ante at 392-93 (attempting to avoid a speeding ticket by falsely claiming to be a police officer is “precisely the kind of conduct that the statute was designed to prohibit”). Nothing before us indicates that the challenged clause was intended to prohibit citizens from posing as off-duty officers to dodge speeding tickets. Officers, just like judges and all other citizens, are subject to traffic laws and should be ticketed just like anyone else when they fail to obey them. The government interest here is public safety — not the prevention of non-police officers from attempting to obtain benefits that police officers should not themselves receive.
Alvarez binds us to hold that even if the government interest is compelling, the statute at issue in this case, as written, imposes disproportionate constitutional harm in a way that a more finely-tailored statute would not. Like the Stolen Valor Act, Virginia’s statute “applies in family, social, or other private contexts, where lies will often cause little harm. It also applies in political contexts ... [where] the risk of censorious selectivity by prosecutors is also high.” Alvarez, 132 S.Ct. at 2555 (Breyer, J., concurring in the judgment). Further, even requiring that the falsehood be intentional, the statute still covers a wide range of government officials — “other peace officers]” for example — creating a risk that truthful speech will be chilled as a “speaker might still be worried about being prosecuted for a careless false statement, even if he does not have the intent required to render him liable.”[3] Id.
*403 Moreover, while the majority opinion is correct that Chappell was not engaged in “bar stool braggadocio,” ante at 398 (quoting Alvarez, 132 S.Ct. at 2555 (Breyer, J., concurring in the judgment)), it fails to address the critical issue of whether the statute would apply “where it should not be applied, for example, to bar stool braggadocio or, in the political arena, subtly but selectively to speakers that the Government does not like.” Alvarez, 132 S.Ct. at 2555 (Breyer, J., concurring in the judgment). In criminalizing merely the false statement that one is employed as a police officer, the statute surely would apply to any number of white lies, including bar stool braggadocio.[4] In short, the statute criminalizes enumerable statements that do not implicate the government’s interest in public safety.
At issue then, is whether the government may achieve its interest in a way that places less of a burden upon protected speech. The multitude of states that have more finely-tailored statutes than Virginia’s demonstrates that, yes, the government’s interest in the repute of its law enforcement officers can be achieved in a less burdensome way. See, e.g., 18 U.S.C. § 912 (criminalizing assuming or pretending to be a government officer and either “actfing] as such” or obtaining a thing of value); Ala.Code § 13A-10-11 (“A person commits the crime of impersonating a peace officer if he falsely pretends to be a peace officer and does any act in that capacity”); Conn. Gen.Stat. § 53a-130a (requiring an “intent to induce another person to submit to such pretended official authority or otherwise to act in reliance upon that pretense”); Fla. Stat. § 843.08 (criminalizing pretending to be a police officer and “taking upon himself or herself to act as such, or to require any other person to aid or assist him or her in a matter pertaining to the duty of any such officer”); Mass. Gen. Laws ch. 268, § 33 (requiring that the impersonator “acts as [a police officer] or requires a person to aid or assist him in a matter pertaining to the duty of such officer”); N.J. Stat. § 2C:28-8 (requiring “purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense”).
*404 Neither the government nor the majority opinion has explained why a more narrowly tailored statute would not work here. The majority contends that “counterspeech may also be less than effective in cases like Chappell’s, where a person claims to be a police officer to evade punishment.” Ante at 398-99. However, the case before us contradicts the majority opinion’s position. The police officer here was able to debunk Chappell’s falsity without much difficulty. Further, the need for counterspeech did not exist in this situation. An off-duty police officer should not be able to evade punishment for speeding, so there should be no need to check a database of police officers to determine whether a claim like Chappell’s is true.
I particularly disagree with my fine colleagues’ attempt to distinguish Alvarez on the basis that unlike the Stolen Valor Act, “Section 18.2-174 ... serves interests repeatedly acknowledged by the Supreme Court to be compelling.” Ante at 394 n.l. I cannot join in that distinction because it reflects a misreading of Alvarez. All nine Justices in Alvarez agreed that the government’s interest in enacting the Stolen Valor Act was a compelling interest. See Alvarez, 132 S.Ct. at 2549 (plurality opinion) (“[T]o recite the Government’s compelling interests is not to end the matter.”); id., 132 S.Ct. at 2555 (Breyer, J., concurring in the judgment) (“Like both the plurality and the dissent, I believe the statute nonetheless has substantial justification.”); id., 132 S.Ct. at 2565 (Alito, J., dissenting) (“The Stolen Valor Act ... [was] enacted to address an important problem.”). The constitutional defect of the Stolen Valor Act was not the absence of an underlying compelling interest but instead the lack of fit between its statutory language and unmistakable compelling interest. See id., 132 S.Ct. at 2547 (plurality opinion) (“Where false claims are made to effect a fraud or secure moneys or other valuable considerations ... it is well established that the Government may restrict speech without affronting the First Amendment. But the Stolen Valor Act is not so limited in its reach.” (citation omitted)); id., 132 S.Ct. at 2556 (Breyer, J., concurring in the judgment) (“[I]t should be possible significantly to diminish or eliminate [the statute’s constitutional defects] by enacting a similar but more finely tailored statute____[which] might ... insist upon a showing that the false statement caused specific harm or at least was material.”). Indeed, it will not be surprising if Congress responds to the Supreme Court’s decision in Alvarez with a more narrowly tailored version of the Stolen Valor Act.
Analogously, the constitutional defect in the second part of Va.Code § 18.2-174 is not the absence of a compelling interest— the compelling interest is obvious and is indeed recognized by Alvarez — but instead the lack of fit between its statutory language and unmistakable compelling interest.[5]
*405 c.
In sum, the Supreme Court, in its most recent term, addressed a statute that, like this one, criminalized mere false speech. Notwithstanding the unambiguous symmetry between Alvarez and the present case, the majority opinion finds it “difficult to understand why” Alvarez “binds us.” Ante at 393-94. Stare decisis, however, requires that we follow the judgment in Alvarez and not, as the majority opinion has done, cherry-pick dicta from Alvarez but decline to apply its holding and reasoning. Although all nine justices of the Supreme Court recognized in Alvarez that the Stolen Valor Act served a compelling interest, see, e.g., Alvarez, 132 S.Ct. at 2555 (Breyer, J., concurring in the judgment) (“[It] seeks to protect the interests of those who have sacrificed their health and life for their country [and] serves this interest by seeking to preserve intact the country’s recognition of that sacrifice in the form of military honors.”), the Supreme Court nonetheless invalidated the statute for want of narrow tailoring. The government interest underlying the Stolen Valor Act — in my view, if not the majority’s — is no less compelling than the government’s interest in prohibiting a retired police officer from stating that he is a police officer for the purpose of seeking to evade a speeding ticket.[6] Accordingly, as in Alvarez, the second part of Section 18.2-174, with its sweeping language criminalizing false statements without any clear limiting principles on the government’s power, must fail constitutional scrutiny.
II.
The majority opinion seeks to avoid Alvarez’s holding by adopting the over-breadth analysis that the Alvarez dissenting opinion suggests is required yet misapplied by the Alvarez plurality and concurrence. See Alvarez, 132 S.Ct. at 2564-65 (Alito, J., dissenting) (“But to strike down a statute on the basis that it is overbroad, it is necessary to show that the statute’s over-breadth is substantial, not only in an absolute sense, but also relative to its plainly legitimate sweep. The plurality and the concurrence do not even attempt to make this showing.” (quotation marks, alterations and citation omitted)).
Assuming, for the sake of argument, that an overbreadth analysis were appropriate in this case, the challenged provision in the Virginia statute would still not survive. Indeed, the challenged statutory provision requires neither an intent to defraud nor an act undertaken while in the guise of being an officer. Put simply, the challenged portion of the statute captures a substantial amount of legitimate speech *406 and expressive conduct. I would conclude that it is therefore unconstitutionally over-broad.
A.
It is well-settled that the United States Constitution provides protection “from overbroad laws that chill speech within the First Amendment’s vast and privileged sphere.” Ashcroft v. Free Speech Coal., 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). A law is unconstitutionally overbroad if it regulates substantially more speech than the Constitution allows to be regulated.
Contrary to the import of the majority opinion, courts have “long recognized that a statute may be attacked as ‘void on its face’ even though the conduct of the litigant might have been legitimately prosecuted under a more narrowly drafted law.” 1 Smolla & Nimmer on Freedom of Speech § 6:4 (2011). Thus, as the Supreme Court has stated,
we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. We have fashioned this exception to the usual rules governing standing, because of the “* * *danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.”
Dombrowski v. Pfister, 380 U.S. 479, 486-87, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (citations omitted).
Because the prohibition against statutory enforcement that accompanies a finding of overbreadth constitutes “strong medicine,” the Supreme Court has counseled lower courts to declare statutes facially overbroad “sparingly and only as a last resort.” Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Accordingly, “a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications.... ” New York v. Ferber, 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Nevertheless, when a statute is in fact facially overbroad, the Supreme Court has readily stricken it down. See, e.g., United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010).
B.
As the Supreme Court recently underscored, “ ‘[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.’ ” Stevens, 130 S.Ct. at 1587 (quoting United States v. Williams, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)). The Supreme Court thus instructs us clearly to focus not on the particular facts of the case before us, as the majority does, but on the challenged statute itself.
1.
Virginia Code § 18.2-174 states that “[a]ny person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or who shall falsely assume or pretend to be any such officer, shall be deemed guilty of a Class I misdemeanor.” (emphasis added). Chappell challenges only the latter, emphasized clause of the statute, under which he was convicted.
Neither this statute nor the definitional statute in the same chapter defines the terms “false,” “assume,” or “pretend.” We should therefore accord the terms their ordinary meaning. See United States v. *407 Thompson-Riviere, 561 F.3d 345, 355-56 (4th Cir.2009). The American Heritage Dictionary defines “false” as “[contrary to fact or truth.” American Heritage Dictionary 638 (4th ed. 2009). It defines “assume” as “[t]o take upon oneself.” Id. at 110. And it defines “pretend” as “[t]o give a false appearance of; feign.” Id. at 1390. In other words, this statute criminalizes, contrary to fact, feigning being an officer.
The government suggests that the word “falsely” modifies both assume and pretend and that it injects an intent-to-defraud component into the statute that thereby saves it from unconstitutional overbreadth. First, it is at best unclear that the word “falsely” modifies the word pretend and not just the word assume. See Va.Code § 18.2-174 (“or who shall falsely assume or pretend to be any such officer.... ”). Because the definition of “pretend” inherently includes an element of falsity, as the dictionary definition quoted above illustrates, it makes little sense that “falsely” should modify “pretend.”
Further, even assuming for the sake of argument that falsely modifies pretend, I fail to see how one would leap from that to “a defendant must hold him or herself out as a police officer in a way that could at least potentially mislead or be for an improper purpose!,]” as the government contends. Appellee’s Br. at 10. The statute does not even hint at such limiting language; it does quite the opposite.
While the first part of the statute prohibits the act of holding oneself out as a police officer, the second part contains no act requirement and criminalizes mere false speech. The first part of the statute criminalizes “[a]ny person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer____” Va.Code § 18.2-174. The first part of the statute implies that beyond claiming or pretending to be an officer, a defendant must act as such and “hold him or herself out as a police officer. ...” Appellee’s Br. at 10. To interpret the second clause as requiring the same thing would render it superfluous, in violation of the rules of statutory construction. See Scott v. United States, 328 F.3d 132, 139 (4th Cir.2003) (stating that courts must “give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous”). Therefore, the second clause is best read as applying to situations where individuals claim or even pretend to be police officers, even if they do nothing associated with the “functions, powers, duties and privileges” of being an officer, and even if they do not intend to defraud another.
Crucially, the second part of the statute applies even where, as here, an individual claims to be an off-duty police officer. Chappell made no claim to be on-duty as a police officer, speeding for some legitimate purpose, but only claimed that he was employed as a police officer. In doing so, he was not acting as a police officer or assuming any of the “functions, powers, duties and privileges” of being an officer, but simply stating a false fact about his employment.
Moreover, the statute does not require any particular intent when claiming to be a police officer. Looking at the statute in context, the very next section in the pertinent code chapter, Virginia Code § 18.2-174.1, expressly criminalizes only “willfully impersonating], with the intent to make another believe he is” certain other officials such as a fire fighter. Section 18.2-174.1 hails from the exact same year as the statute at issue in this case — 1975—and has always contained a mens rea element. See Va.Code Ann. § 18.2-174.1, Historical and Statutory Notes. Therefore, when the Virginia legislature enacted these statutes, *408 it clearly knew how to write such elements into statutes. But in the statute at issue here, Va.Code § 18.2-174, it chose not to do so. This Court is not at liberty to override that decision but rather must respect the choice of the state legislature that drafted the statute.
As stated above, giving the terms in the second clause their natural meaning, this statute criminalizes, contrary to fact, feigning being an officer. This aspect of the statute is undeniably broad. It covers not only someone asserting that he is a police officer in the hopes of avoiding a ticket, but also, among other things: children playing cops and robbers on the front lawn; trainees at a police academy role-playing; and actors in plays in which peace officers are characters. Indeed, it would have covered Chappell, even if he had not attempted to avoid a ticket but instead expressed his remorse for violating a traffic law, stating, “I am a police officer and should have known better.” Regardless of whether strict or intermediate scrutiny applies, I believe that this statute reaches a substantial number of impermissible applications and is thus overbroad.[7]
2.
Of course, my conclusion that the challenged provision in the Virginia statute is overbroad does not in any way indicate that I question the importance of impersonation statutes as such. I fully agree with the majority opinion that state impersonation statutes can “ ‘protect citizens who would be harmed or deceived by those acting under the color of authority.’ ” Ante at 392 (quoting People v. Ellis, 296 Ill.App.3d 862, 231 Ill.Dec. 272, 696 N.E.2d 1, 3 (1998)). However, the challenged statutory provision does not require “acting under the color of authority” but merely “pretending” to be an officer for whatever purpose. That extreme breadth cannot pass constitutional muster.[8]
The government does not even attempt to argue that regulating such speech and conduct would be constitutional. Neither does the majority opinion. Instead, both simply suggest that these scenarios are far-fetched and that the statute would not be enforced in such situations. First, I cannot agree that they are far-fetched. It seems highly likely that these scenarios occur with substantially greater frequency than someone pretending to be an officer for nefarious purposes. Second, an otherwise overbroad statute cannot be saved based on its history of past enforcement. See, e.g., Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 260 n. *409 8 (4th Cir.2003) (noting that even though a school dress code had been enforced only to ban “images of gunmen aiming high-powered firearms,” this was insufficient to establish a limiting construction when the dress code did “not even remotely suggest” such a limitation). Convenient to its analysis, the majority opinion has chosen to ignore that this Court, just last year, struck an unconstitutionally overbroad statute that had never been enforced against constitutionally protected expressive conduct. See Legend Night Club v. Miller, 637 F.3d 291, 300 (4th Cir.2011). Had the majority followed Legend Night Club, then it would have recognized the irrelevance of its claim that Chappell’s challenge is crippled by his failure to “point to even one” case where Hollywood actors, Halloween partiers, or others were prosecuted. Ante at 395-96.
Further, assertions about future enforcement also cannot rescue a constitutionally infirm speech regulation. As the Supreme Court recently made clear, “the First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.” Stevens, 130 S.Ct. at 1591; see also Legend Night Club, 637 F.3d at 300-01. The majority opinion seems to suggest that prosecutors will interpret the statute much more restrictively than its face suggests, presumably thereby sparing the statute from constitutional problems. See ante at 394-95. But as the Supreme Court noted in Stevens, the need to point out that the challenged statute would be applied more restrictively than its language permits simply underscores the statute’s overbreadth. Stevens, 130 S.Ct. at 1591 (“The Government’s assurance that it will apply [the challenged statute] far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading.”).
The majority opinion posits that striking down the challenged clause at issue here “would exhibit disrespect” for the Virginia legislature. Ante at 399-400. First, while I am highly sensitive to the federalism concerns this case presents, I query what role the majority opinion supposes our federal Constitution, with both its First Amendment and Supremacy Clause, should play. Further, I underscore that Chappell does not challenge Virginia Code § 18.2-174 in its entirety but merely one clause thereof. And the problematic clause can, and therefore should, be severed from the remainder of the statute. See Free Enter. Fund v. Public Co. Accounting Oversight Bd., — U.S.-, 130 S.Ct. 3138, 3161, 177 L.Ed.2d 706 (2010) (“Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.” (quotation marks omitted)). This case is therefore not about “strik[ing] down the statute,” as the majority would have it, ante at 399, but merely severing out an overbroad clause while leaving the remainder of the statute intact.
Finally, it is out of respect for the Virginia legislature that I would send the infirm clause back to that body for amendment rather than pencil in some additional element concocted by this Court in order to save the statute’s problematic clause. As I note above, different states (and the federal government) have adopted various additional elements, such as mens rea requirements, that take those impersonation statutes out from under a constitutional cloud. It is for the Virginia legislature alone to decide which formulation best matches its state’s needs.
*410 III.
In sum, a straight forward application of Alvarez’s analysis and holding compels the invalidation of the challenged provision of the impersonation statute at issue in this case. Under the analysis set forth in the plurality and concurring opinions in Alvarez, the second part of Va.Code § 18.2-174 is not narrowly tailored and, therefore, invalid. Further, even if we were to engage in the overbreadth analysis that the Alvarez dissenting opinion suggests is required, I would conclude that the second clause of the Virginia impersonation statute captures a substantial amount of legitimate speech and expressive conduct in addition to properly regulated speech and expressive conduct. I would, therefore, find it overbroad and unenforceable. And because Chappell was expressly convicted under the infirm clause, his conviction and sentence for the impersonation charge would need to be vacated. For all these reasons, I respectfully dissent.

. In Alvarez, the Court invalidated the Stolen Valor Act, which made it a crime to "falsely respresen[t]” oneself "to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States.” 132 S.Ct. at 2552 (Breyer, J., concurring) (citing 18 U.S.C. § 704(b)).

. The majority opinion acknowledges that the impersonation statute cited by both the plurality and concurring opinions, 18 U.S.C. § 912, differs from our statute, mainly because it requires that an impersonator of an officer, beyond falsely claiming to be an officer, "act [] as such.” See ante at 397 n.3. The majority dismisses this distinction as irrelevant, stating that § 18.2-174 is just a part of a "family of statutes,” such as the one above, with a "plainly legitimate sweep.” See ante at 397 n.3. But this conclusory statement is not in line with Alvarez, which we are obligated to follow. Justice Breyer's opinion distinguishes the Stolen Valor Act from 18 U.S.C. § 912 by emphasizing that "statutes forbidding impersonation of a public official typically focus on acts of impersonation, not mere speech.” Alvarez, 132 S.Ct. at 2554 (Breyer, J., concurring in the judgment) (emphasis in original). Justice Breyer and Chappell raise the same distinction, and this statute raises the same First Amendment concern as the Stolen Valor Act.

. In Alvarez, Justice Breyer assumed that the Stolen Valor Act included a mens rea requirement, but held that false speech, even intentional lies, receive First Amendment protection. See Alvarez, 132 S.Ct. at 2552-53 (Breyer, J., concurring in the judgment) (reading the statute "favorably to the government as criminalizing only false factual state- *403 merits made with knowledge of their falsity and with the intent that they be taken as true”). While I do not read a mens rea requirement into the challenged Virginia statutory provision, even if the provision did require that the speaker intend that her statements be taken as true, or that her pretending be believed, it would not affect the analysis here, as Justice Breyer's concurring opinion, along with the plurality opinion, concluded that the Stolen Valor Act, even with a mens rea requirement, violated the First Amendment. Id. at 2551 (plurality opinion); id. at 2561-62 (Breyer, J., concurring in the judgment).

. There is no basis for the majority opinion’s contention that "the statute does not proscribe all untruths about one’s occupation or accomplishments, but only lies that may trick ordinary citizens into the erroneous belief that someone is a peace officer and that may in turn deceive a person into following a harmful 'course of action he would not have pursued but for the deceitful conduct.' ” Ante at 399 (quoting Alvarez, 132 S.Ct. at 2554 (Breyer, J., concurring in the judgment)). Critically, there was no such harm here because there is no "legally cognizable harm associated with [Chappell's] false statement.” Alvarez, 132 S.Ct. at 2545 (plurality opinion). The statute was violated by Chappell the moment he said he was a police officer. His claim did not threaten the government’s interest in public safety and was easily debunked by the arresting officer. The arresting officer’s privacy was not invaded, nor was his safety, or anyone else’s, endangered. The arresting officer should not have taken a different course of action when Chappell claimed to be an off-duty police officer than he would have taken otherwise because even if Chappell had truly been a police officer, he should have received a citation all the same.

. It is important to note that the first part of Section 18.2-174, which prohibits "falsely as-sum[ing] or exercising] the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer,” is not subject to constitutional challenge and that, accordingly, the majority opinion’s concern for invalidating a statute that "serves interests repeatedly acknowledged by the Supreme Court to be compelling” is misplaced. Given that this first part of Section 18.2-174 would remain intact irrespective of our decision today, I fail to understand the majority opinion’s view that acts of pretending to be a police officer so as to board an airplane or to abduct a child would some how go unregulated by a decision invalidating Section 18.2-174's constitutionally infirm clause. To be clear, such criminal acts— in addition to violating laws against, among other things, kidnapping — would violate the first part of Section 18.2-174, as they involve *405 assuming, through acts, the duties and privileges of being a police officer, such as obtaining the authority to board an airplane or enter a home.

. The majority opinion contends that invalidating Section 18.2-174 would place "numerous federal and state impersonation statutes at risk.” Ante at 397-98. As an initial matter, the majority opinion's contention is undermined by the very statutes it cites because they criminalize more than mere false speech. See 18 U.S.C. § 914 (impersonating a creditor of the United States and committing a specified act); 18 U.S.C. § 915 (impersonating diplomats and acting as such or obtaining a thing of value); 18 U.S.C. § 917 (impersonating Red Cross members “for the purpose of soliciting, collecting, or receiving money or material”). Further, tire protections of the First Amendment are not subject to a convenience analysis. The Supreme Court in Alvarez provided us with an analytical framework when considering restrictions on false speech. That framework does not ignore the important government interests at stake, but, rather, asks if the restrictions on protected speech are sufficiently narrowly tailored to that interest.

. As noted, Virginia is far from the only jurisdiction with an impersonation statute. To be sure, there are many such state statutes, as well as a federal statute. Notably, the vast majority of those statutes require something more than just "pretending” to be held criminally liable. They require: a mens rea such as intent to defraud another, see, e.g., Conn. Gen.Stat. § 53a-130a, Ga.Code § 16-10-23, and N.J. Stat. § 2C:28-8; or acting as an officer, see, e.g., 18 U.S.C. § 912, Ala.Code § 13A-10-11, Fla. Stat. § 843.08, and Mass. Gen. Laws ch. 268, § 33. Looking to other impersonation statutes only underscores that the challenged clause of the Virginia statute, criminalizing mere pretending, or false speech, is problematic.

. The majority opinion states that "[fjalsely identifying oneself as a policeman in order to get out of a speeding ticket is simply not the kind of expressive conduct the Framers of our first and one of our greatest amendments had in mind.” Ante at 399-400. That may well be. The Framers surely also did not craft the First Amendment to allow the likes of Mr. Alvarez to falsely purport to have received the Congressional Medal of Honor in a "pathetic attempt to gain respect that eluded him.” Alvarez, 132 S.Ct. at 2542 (plurality opinion). Nevertheless, the Supreme Court struck the statute as violative of the First Amendment.